[Crim. No. 12793.  Second Dist., Div. One.  Mar. 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM ROBERT HILL, Defendant and Appellant.

454

William Robert Hill, in pro. per., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Anthony S. Dick, Deputy Attorneys General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from "the judgment of committment [sic] . . ." of defendant as a narcotics addict.

On May 30, 1966, Sergeant Trotsky, of the Los Angeles Police Department, received information from a confidential reliable informant that James Gleason and his wife were users and sellers of narcotics from a residence in Van Nuys. The next night at about 9 p.m. Sergeant Trotsky and Sergeant Olson approached the front door of the house in question and at about that time defendant opened the door from within and was about to leave the place. Sergeant Trotsky showed his badge and said, "Police officer" whereupon defendant whirled around and started back into the house at a rapid pace. Sergeant Trotsky saw defendant's right hand go to his mouth with a small object. He pursued defendant into the house and saw defendant's right hand come out of defendant's right pants pocket and another motion to his mouth followed by a swallowing motion. The officers, at first, started to restrain defendant, then decided to let him swallow whatever it was he had in his mouth.

Defendant was placed under arrest. Sergeant Trotsky looked at defendant's arms and saw numerous puncture marks in the veins; he also saw that defendant's eyes had constricted pupils and did not react to light flashed into them. When left alone for a short time, defendant went into a slumberous state. Sergeant Trotsky, an expert in the field of narcotics, came to the conclusion that defendant was using narcotics illegally and took him to a station where defendant was examined further. Sergeant Trotsky came to the conclusion that defendant was a user of narcotics and that at that time defendant was under the influence of narcotics.

At about 3 a.m. on June 1, 1966, defendant was admitted to the jail infirmary and later Doctor Lavelle, a physician assigned to the infirmary, examined defendant. Doctor Lavelle concluded that defendant was then an active narcotics user; that he was addicted to the use of narcotics and that he was then in the early stages of narcotics withdrawal. During the examination by Doctor Lavelle defendant admitted that he had been using narcotics for years and that he had had his

last narcotics within two days. that his habit ran to about $20 every two days. The doctor calculated that this meant that defendant was consuming about four capsules per day and that defendant was emotionally dependent upon the narcotics.

Procedurally, the record discloses that on May 31, 1966, an application was made for the admission of defendant to the Los Angeles County Jail Infirmary pursuant to Welfare and Institutions Code, section 3100.6. On June 1, 1966, an affidavit of Doctor F. E. Wetzel was made wherein it was stated that a further examination was necessary to determine whether defendant was an addict, or was about to become such. Later, on June 1, 1966, Doctor Lavelle examined defendant and in an affidavit stated that he believed defendant to be addicted to the use of narcotic drugs, ''or by reason of the repeated use of narcotics is in imminent danger of becoming addicted thereto and unless confined is likely to injure himself or become a menace to the public.'' The doctor set forth in some detail why he entertained such belief, i.e., defendant's admission to such use, symptoms of withdrawal, high stepping gait, slowness in responses, repeated yawns, pupils dilated and reacting sluggishly to light, catarrhal nasal discharge, marked secretion of mucous membranes of mouth, upper extremities showing marked tracks, right arm showing about 20 recent puncture marks over old scarred tissue.

The affidavits were referred to the district attorney who, on June 2, 1966, petitioned the superior court to commit defendant as a narcotics addict. On that date the court issued an order of detention pursuant to Welfare and Institutions Code, section 3102. On June 9, 1966, an order setting the time of the hearing and ordering defendant to appear was filed. On June 20, 1966, at a hearing where defendant was represented by counsel, the court found defendant to be a drug addict within the meaning of section 3100 of the Welfare and Institutions Code and committed him to the Director of Corrections for placement. Defendant then demanded a jury trial and the same was set for July 6, 1966, the defendant to remain on bail.

On July 6, 1966, the public defender was appointed to represent defendant in the trial. On July 13, 1966, the matter came on for trial. A stipulation was entered into between counsel with reference to the trial.[1]

---

[1]''It is hereby stipulated by and between counsel for the respective parties in the above entitled action:

''First: That in the absence of counsel the Court may, upon the request of the jury, bring the jury into court and re-read to the jury any

A jury was impanelled and the case was tried. Defendant testified that on the occasion when he first saw Sergeant Trotsky he was swallowing peanuts, that at one time he was a narcotics addict, that he used narcotics periodically (he could not say just how frequently he used narcotics), that the last time he had a ''fix'' was the weekend prior to his arrest, that when he did inject heroin into his body he usually did so into his arm, that he had no craving for narcotics, that the last time he ''fixed'' he used ''two, three caps,'' that he had previously been convicted of a felony. On July 14, 1966, the jury returned a verdict wherein it was found that defendant ''is by reason of repeated use of narcotics in imminent danger of becoming a narcotic addict.'' Upon being polled, it was ascertained that the verdict was unanimous. The judge found that the defendant was in imminent danger of becoming a narcotic addict and ordered defendant committed to the Director of Corrections in accordance with the commitment made on June 20, 1966. A timely notice of appeal was filed.

Appellant now asserts that there was no probable cause to arrest him, that he was denied a fair and impartial trial, that the court had no jurisdiction to sentence him without his attorney being present in his behalf and that his constitutional rights were violated. There is no merit to appellant's contentions.

■ This is not a criminal case. The commitment procedures are in the nature of special civil proceedings. (*In re De La O,* 59 Cal.2d 128, 150 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]. See also *In re Trummer,* 60 Cal.2d 658, 662 [36 Cal.Rptr. 281, 388 P.2d 177]; *In re Castro,* 243 Cal.App. 2d 402, 407 [52 Cal.Rptr. 469].)

■ The officers had reasonable cause to believe that appellant was addicted to the use of narcotics, or was in imminent danger of becoming addicted to their use. Under the circum-

---

instructions previously given, or may give any new instruction upon any matter that may be requested providing any such new instruction is in writing or taken down in shorthand.

''Second: To have re-read to the jury at its request any portion of the testimony given in the trial, and in addition, to give to the jury, to be taken into the jury room, any of the exhibits that may be requested by them.

''Third: In the absence of counsel, the Court may call the jury into the court room to ascertain whether or not a verdict is probable, to receive the verdict of the jury and poll the jury.

''Fourth: In the absence of the trial judge that the verdict may be received by any judge of this court.''

stances, they were authorized under section 3100.6, Welfare and Institutions Code, to take appellant into custody for his own best interests and protection. The record recites that the police were meticulously careful in taking every step in exact accordance with the statute.

The sole issue at the trial was whether appellant was a ''drug addict or by reason of repeated use of narcotics was in imminent danger of becoming addicted . . .'' The procedural requirements of the statutes were strictly and properly followed.

The officers had probable cause to arrest the appellant under the circumstances, but in any event it is unimportant in this proceeding. Even if the matter were a criminal case, the conviction would be unaffected by the lawfulness of the arrest. (*People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633] ; *Frisbie* v. *Collins,* 342 U.S. 519, 522 [96 L.Ed. 541, 72 S.Ct. 509].)

■ The trial was fair and impartial. We have read the record and the rulings of the judge were proper under the circumstances. Appellant's claim to the effect that he was entitled to confront the informer is without merit. There is no obligation to produce the informer. (*Roviaro* v. *United States,* 353 U.S. 53 [1 L.Ed.2d 639, 77 S.Ct. 623] ; *Williams* v. *United States,* 273 F.2d 781; *Eberhart* v. *United States,* 262 F.2d 421.) ■ There was no request by appellant for the identification of the informer nor has appellant indicated that he does not know who the informant was, nor has he indicated what the identity of the informer has to do with whether he, the appellant, is an addict. Appellant cannot raise the question of nondisclosure for the first time on appeal when he did not seek disclosure at the trial or preliminary hearing, or did not move to strike the testimony on a refusal to disclose. (*Priestly* v. *Superior Court,* 50 Cal.2d 812, 819 [330 P.2d 39].)

■ No sentence was passed upon appellant. The judge at the conclusion of the jury trial ordered that the previously existing commitment order of June 20, 1966, be executed. If there was a sentence (and we do not so hold) it was made on June 20, 1966, when appellant's counsel was with him. Appellant has in no way pointed out how he was in any respect prejudiced by his attorney's not being present at the time the jury returned its verdict and the court ordered the existing commitment into full force. The constitutional provision to which appellant directs our attention (Cal. Const., art. I, § 13) deals with rights of an *accused* person in a *criminal*

action. Appellant here was not accused of any crime, nor was the proceeding criminal.

Appellant argues that he was not advised of his constitutional rights at the time of his being taken into custody or at the time the doctor talked to him. First of all, no objection was made in the trial court to the statement of the doctor even assuming that he was entitled to any admonition as would be given in a criminal case. To make the criminal law restrictions and rules applicable to the statutes in question would do violence to the legislative policy upon which the law is based and be wholly unwarranted.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.