FILES, P. J.
 

 On August 4, 1966, Crespin Martinez Donel was arrested on a traffic warrant. The arresting officer concluded that Donel was addicted to the use of narcotics or, by reason of repeated use of narcotics, in imminent danger of becoming addicted. Another officer thereupon made an application for Donel’s admission to a hospital, to wit, the Los Angeles County jail infirmary, pursuant to section 3100.6 of the Welfare and Institutions Code. On August 5 Patrick J. Lavelle, M.D., a licensed physician, executed an affidavit stating he had examined Donel and that in his opinion further examination was necessary. On August 6 Dr. Lavelle made an affidavit stating that Donel was addicted or in imminent danger of addiction, and giving the reasons for this opinion. Thereupon the district attorney filed a petition to initiate a proceeding under Welfare and Institutions Code section 3100 for Donel’s commitment for confinement in the narcotic detention, treatment and rehabilitation facility. This petition came on for a hearing, following some continuances, on September 6, 1966, before Judge Leopoldo G. Sanchez. Donel was represented by his attorney, Bradford Arthur. At the conclusion of the hearing the court ordered Donel committed to the custody of the Director of Corrections, pursuant to Welfare and Institutions Code section 3106.
 

 Donel then demanded a jury trial as allowed by section 3106, and the court fixed September 14 as the date of that hearing. On September 14 Donel appeared without counsel. At Donel’s request the court appointed the public defender to assist him, and continued the hearing to September 29, 1966. Defendant expressly waived time. On September 29 Donel was ready to proceed but the People were not, due to the absence of Dr. Lavelle, the examining physician. The court stated that four matters were awaiting hearing and for that reason this
 
 *393
 
 case could not be heard. Over Donel’s objection the hearing was postponed to October 10.
 

 On October 10 a hearing was commenced before a jury, and on October 11 a verdict was returned finding “that Crespin Martinez Donel is by reason of repeated use of narcotics in imminent danger of becoming a narcotics addict." Donel was remanded for delivery to the Director of Corrections.
 

 Donel is appealing from the order recommitting him, based upon the jury verdict.
 

 In addition, he has filed in this court a petition for a writ of habeas corpus, attacking his detention under this commitment. So that all issues might be resolved at the same time, an order to show cause was issued, and the habeas corpus matter set for hearing simultaneously with the appeal. Counsel has been appointed by this court to assist Donel in connection with both matters.
 

 A review of the record and the return demonstrates that the proceedings were regular in all material respects and that the commitment is not vulnerable to attack by direct appeal or habeas corpus proceedings.
 

 Several contentions made by Donel and his appointed attorney will be mentioned separately.
 

 1.
 
 Legality of the Arrest
 

 Donel claims he was arrested illegally on August 4, 1966.
 

 The Attorney General contends that the civil commitment is valid irrespective of the legality of the initial arrest, citing
 
 People
 
 v.
 
 Hill,
 
 249 Cal.App.2d 453, 457-458 [57 Cal.Rptr. 551]. It is unnecessary to reach that question for in this record there is no evidence of any unlawful police conduct.
 

 The application for Donel’s admission to the hospital, signed by Sergeant Glen A. Bachman, contains this statement of the circumstances under which Donel’s condition came to his attention: “Sub. was observed loitering in an area of extremely high narco, frequency and associating with known narco, users. Ofcrs. interviewed sub. with the purpose of I.D. and a check with criminal records that there was an outstanding misd. warrant for the above sub. During the interview process, after arrest, sub. was asked if he had any tatoo’s [sic], at which time he rolled up the left sleeve of his shirt displaying a tatoo [sic] of a tiger which contained 3 bleeding puncture wounds over the vein directly above this, sear tissue was noted over the vein. Sub. was transported to Narco. Div. where he was advised of his constitutional rights and examination by Sgt. Bachman revealed 3 fresh puncture wounds
 
 *394
 
 over the vein of the left forearm. Directly above this approx. 4" of scar tissue over the vein made from previous injections. All of these marks in the expert’s opinion being made from the illegal injection of a narco. The light accommodation test revealed that the sub. pupils were fixed at 1mm, that the septum of his nose was red and during the interview his head continually nodded and became inattentive to the conversation. Sub. is uncommunicative, states he has never taken a cure for narco, usage denies any use or knowledge of narco, and denies the recent injection marks which were apparent. In the exper’s
 
 [sic]
 
 opinion, sub. at this time was under the influence of herion
 
 [sic]
 
 and is in an imminent danger of becoming addicted.”
 

 The circumstances of the arrest were given in more detail in the testimony of Officer Klein at the hearing before the court on September 6.
 

 Officer Klein testified that on August 4, 1966, at about 7 :30 p.m., he was in uniform with his partner patrolling the vicinity of Third and Hill Streets in downtown Los Angeles. There he was “checking out” a woman concerning whom he had received a prostitution report. Donel approached and asked the officers what they were doing with his wife. A businessman, known to the witness as the owner of restaurants and a hotel in the neighborhood, then told the officers that Donel was pimping for the woman. The officers asked Donel whether the woman was his wife and whether she was a prostitute. After Donel had identified himself, the officers called the records office to find out if there was a warrant outstanding.
 

 No other witness testified concerning this occurrence.
 

 Prior to the time the officers learned of the warrant, there was nothing more than a sidewalk interview with a man who had injected himself into the officers’ conversation with another person. When the police learned of the warrant, the arrest was in order. When the officers noted the watery eyes with the pinpointed pupils, they were on notice that their prisoner might then be under the influence of narcotics; and an inspection of his arms was a reasonable next step, for the prisoner’s own well-being, as well as for their own understanding of how to deal with him. The 1 ‘ illegal arrest ’ ’ argument is without merit.
 

 2.
 
 Sufficiency of the Evidence
 

 Donel argues that the evidence was insufficient in that there was no proof of the three characteristics of addic
 
 *395
 
 tion, namely, emotional dependence, tolerance and physical dependence, citing the discussion which appears in
 
 People
 
 v.
 
 Victor,
 
 62 Cal.2d 280, 297-306 [42 Cal.Rptr. 199, 398 P.2d 391]. That opinion upholds the power of the Legislature to authorize confinement of persons who are not yet addicted. Contrary to Donel’s contention, that decision does not require proof of all of the characteristics of addiction before a patient may be confined for treatment. The Supreme Court said (at p. 301) : “In creating a distinct category of persons who ‘by reason of repeated use ’ of narcotics are in imminent danger of ‘becoming’ addicted, the Legislature has in effect recognized the fundamental medical fact that narcotics addiction is not so much an event as a process,’’ and (at pp. 304-305) : “On the one hand, an individual may not escape an inquiry into his addictive status merely by showing that he is not yet ‘hooked’ in the strict sense of the word. On the other, to be brought within this category it is not enough that the individual be ‘addiction-prone, ’ or associate with addicts, or even have begun to experiment with drugs; he must have subjected himself to 1 repeated use of narcotics. ’ [Fn. omitted.] Defendant’s argument that ‘repeated use’ can theoretically mean as few as twice is unreasonable when the phrase is seen in the context of the whole addiction process, for ‘At least several weeks of experience with a drug are usually necessary for the development of an addiction. ’ (Winick,
 
 Narcotics Addiction and Its Treatment
 
 (1957) 22 Law & Contemp. Prob. 9, 13.) Nor is it enough that the individual have thus ‘repeatedly used’ narcotics, or even be ‘accustomed or habituated’ to their use, unless such repeated use or habituation has reached the point that he is in imminent danger—in the commonsense meaning of that phrase discussed above—of becoming emotionally or physically
 
 dependent
 
 on their use. ’ ’
 

 The evidence here shows that Donel appeared
 
 to be
 
 under the influence of narcotics at the time of his arrest. Urinalysis shortly afterward disclosed the presence of morphine. In the hospital the doctor observed symptoms of narcotics withdrawal. The examining physician testified that in his opinion Donel had already become addicted. He found old sear tracks indicating use over a period of years. There was a tattoo over one old track. He saw four puncture wounds which were two days to two weeks old. Donel admitted to the doctor that he had used narcotics for a period of a year and a half. From his observations the doctor inferred that the
 
 *396
 
 patient had attained a tolerance for narcotics and emotional dependence.
 

 In this case, unlike
 
 People
 
 v.
 
 Bruce,
 
 64 Cal.2d 55 [48 Cal.Rptr. 719, 409 P.2d 943], there was no contrary evidence offered and no alternative explanation given for the symptoms which indicated addiction.
 

 This evidence is sufficient to support the verdict of the jury that Donel was, “by reason of repeated use” of narcotics, in imminent danger of becoming addicted.
 

 3.
 
 Speedy Trial
 

 Welfare and Institutions Code section 3108 provides for a jury trial in accordance with the provisions of section 5125 (now § 5572) of that code. Section 5572, which applies generally to the trial of persons committed for mental illness, provides that “the court shall set the case for a hearing at a date, or shall cause a jury to be summoned and to be in attendance at the date stated, not less than five nor more than 10 days from the date of the demand for a court or jury trial.”
 

 This statute was derived from former Political Code section 2174 which was adopted in 1903. With respect to that section the Supreme Court said: “We are of the opinion that the failure of the court to impanel a jury and try the matter of insanity within the ten days from the date of the demand does not deprive the superior court of jurisdiction to proceed thereafter with the matter. We deem the provision to be directory only. If the superior court should unreasonably delay the trial, the remedy would be by a proceeding in
 
 mandamus
 
 in the district court of appeal or the supreme court to compel the court to proceed.”
 
 (In re Scott,
 
 187 Cal. 770, 772 [204 P. 571].) That decision is controlling here.
 

 4.
 
 Lack of a Unanimous Jury
 

 Donel argues that the proceeding should be considered “quasi criminal” and therefore he should not be committed unless the jury so determined by a unanimous verdict. This point is answered by the opinion in
 
 In re De La O,
 
 59 Cal.2d 128, 150 [28 Cal.Rptr. 489, 378 P.2d 793, 38 A.L.R.2d 705] : “The commitment procedures set up by the subject statute are in the nature of special civil proceedings unknown to the common law, and hence there is no right to jury trial unless it is given by the statute. ’ ’
 

 The applicable statutes (Welf. & Inst. Code, §§ 3108, 5572, and Code Civ. Proc., § 618) authorize a verdict by three-
 
 *397
 
 fourths of the jury.
 
 (In re Shackleford,
 
 188 Cal. 279 [204 P. 822].)
 

 5.
 
 The Assistance of Counsel
 

 Donel contends he “was entitled to be defended by Mr. Arthur” and that “the Court erroneously appointed a public defender.” Donel’s point appears to be that the court should have required a written substitution of attorneys in the form referred to in Code of Civil Procedure sections 284 and 285.
 

 The record shows that this is what occurred at the beginning of the hearing on September 14, 1966, when Donel was in court without an attorney:
 

 “The Court: Mr. Donel, at the hearing which was held on September the 6th, 1966, Mr. Brad Arthur appeared as your attorney.
 

 “The Respondent: Yes, sir.
 

 “The Court: Is he still your attorney?
 

 “The Respondent: No, sir.
 

 “The Court: What is your arrangement as to going ahead with the trial which is now set?
 

 “The Respondent: Well, not having seen Mr. Arthur, I think that I will go with the Public Defender.
 

 “The Court: Do you wish the Court to appoint the Public Defender to represent you?
 

 “The Respondent: Yes, sir.
 

 “The Court: Very well.
 

 The Court being informed and advised by the respondent that he is no longer represented by Brad Arthur, attorney, the Court at this time appoints the Public Defender to represent Mr. Donel in these proceedings from this time forward. ’ ’
 

 Inasmuch as the record shows that the public defender was substituted at Donel’s request, he is not prejudiced by the absence of a -writing, and he is not entitled to a new trial upon this ground.
 
 (People
 
 v.
 
 Bouchard,
 
 49 Cal.2d 438, 441-442 [317 P.2d 971].)
 

 6.
 
 Only One Medical Examiner
 

 Donel complains that only one medical examiner was appointed instead of the two examiners mentioned in Welfare and Institutions Code section 3104. He overlooks the language of section 3102: “Upon the filing of a proper petition pursuant to Section 3100.6, accompanied by the affidavit of the examining physician, the court need not order the person sought to be committed to be examined by any other physician or physicians. ’ ’
 

 
 *398
 
 The record shows that Donel had been admitted to a hospital, upon a petition filed under section 3100.6. The appointment of a second examiner was therefore unnecessary.
 

 Donel's argument appears to be based upon the mistaken assumption that the applicable procedure is that set forth in Welfare and Institutions Code section 3051, which incorporates the procedures of sections 5053, 5054 and 5055 (now §§ 5564, 5565 and 5566). Section 3051 is a part of article 2 of the narcotics commitment law, dealing with persons who have been convicted of a crime. The instant proceeding is brought under article 3, which applies to persons not convicted.
 

 7.
 
 Confinement in a State Prison Facility
 

 Donel complains that although he has been committed for the purpose of treatment he is actually confined in a state prison without treatment.
 

 Inasmuch as the treatment program is a compulsory one, and the confinement of the subject is in the nature of a quarantine, it is not improper for the Legislature to provide that the program be carried out in an institution operated by the Director of Corrections.
 
 (In re De La O,
 
 59 Cal.2d 128, 138 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705] ;
 
 People
 
 v.
 
 Reynoso,
 
 64 Cal.2d 432, 435 [50 Cal.Rptr. 468, 412 P.2d 812].)
 

 The propriety of a transfer from the minimum security environment of the California Rehabilitation Center at Corona to the higher security of the California Men’s Colony—East, at Los Padres, is discussed at length in
 
 In re Cruz,
 
 62 Cal.2d 307, 313-318 [42 Cal.Rptr. 220, 398 P.2d 412].
 

 The return filed in behalf of the Superintendent of the California Men’s Colony, where Donel is confined, includes a copy of the case summary from the records of the Department of Corrections. This shows that Donel was received at the California Rehabilitation Center at Corona on October-14, 1966, pursuant to the superior court’s judgment. An evaluation made by a correctional counsellor on November 28, 1966, reported that Donel was “a passive resistor to the program. ’ ’ He had refused to work and refused to attend the group therapy sessions.
 

 Donel was then transferred to the California Men’s Colony—East, where he arrived on December 20, 1966. His most recent progress report, dated August 24, 1967, states that he is performing acceptably in the shoe factory, that his group counselling attendance is regular, and that he could be recoin
 
 *399
 
 mended for return to the Corona facility except that he has stated that he does not wish to return.
 

 In the light of this record, Donel’s allegation that he has been “denied treatment” appears to be the pleader’s conclusion, based upon his misconception of what constitutes proper treatment. The record shows that Donel is being kept in a drug-free environment, under intensive supervision, where he is working at a useful trade and participating in group therapy sessions. The type of treatment which can be given him is necessarily dependent upon the extent of his cooperation.
 

 Donel is not a voluntary patient. He has been deprived of Ms liberty because the Legislature has determined that persons who are addicts or in imminent danger of addiction should be confined for treatment, for the good of the patient and the good of society. A court, after a fair hearing, has determined that Donel is a person requiring such treatment. As the Supreme Court has pointed out, “if the program is to have any hope of long-term success it must remain compulsory.”
 
 (In re
 
 Cruz, 62 Cal.2d 307, 314 [42 Cal.Rptr. 220, 398 P.2d 412].)
 

 The judgment is affirmed. The petition for a writ of habeas corpus is denied.
 

 Jefferson, J., and Kingsley, J., concurred.