[Crim. No. 12776.   Second Dist., Div. One.   Nov. 16, 1567.]

THE PEOPLE, Plaintiff   and Respondent, v. ALFRED GONZALES, Defendant and Appellant.

Richard S. Buckley, Public Defender, Steven Hough, Gerald McC. Franklin and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward J. Horowitz, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—On petition for commitment of appellant as a narcotic addict under section 3100, Welfare and Institutions Code, the superior court made its order of detention and for examination under section 3102, Welfare and Institutions Code. On April 18, 1966, two doctors examined appellant and the hearing was had April 19, 1966; appellant was found to be a narcotic addict and the matter was set for a jury trial. Motion to dismiss the petition was made and denied. Later during the trial, appellant made a second motion to dismiss on grounds of lack of probable cause for arrest and illegal search and seizure; the same was denied. Appellant was found to be a narcotic drug addict and committed to the Director of Corrections. He appeals from order of commitment and orders denying motion for dismissal. The latter appeals are dismissed. (§ 963, Code Civ. Proc.)

On April 6, 1966, Officer Ridenour received from the narcotics division a narcotics complaint regarding an address on Liberty Street where appellant resided; he and his partner placed the location under surveillance and talked to a few neighbors who told them that there were a lot of people going and coming from the house—some stayed a few minutes and left; others pulled up in front of the house, honked the horn, waited for someone to come out of the house, talked to him and left; and sometimes a car pulled up and parked and four or five people stayed in the car while one went into the house

and returned in five or ten minutes. Two days later, on April 8, 1966, around noon, Officer Ridenour and his partner saw a person come out of the house and walk up the street; they stopped him, identified themselves, placed him in custody and ascertained that his name was Negrette, which the officer recognized as that of a known narcotic user. Negrette told Officer Ridenour that appellant was in the house with Mona Carlson, also known to the officer as a narcotics user, and a third person. They told Negrette they wanted him to return with them; they then knocked on the door and a female voice said, "Who is it?" Negrette answered, "Adolpho," and Mona opened the door. Officer Ridenour noticed marks on her hands. He said, "Police Officers," entered and placed her under arrest. They saw appellant, clad only in a pair of shorts, lying awake on a bed; they asked him for identification; as he got out of bed Officer Ridenour noticed numerous marks on his inner elbows—14 scabs from 1 to 20 days old on one, and 30 scabs from 1 to 21 days old on the other. Officer Ridenour formed the opinion that appellant and Mona were suffering from withdrawals and were under the influence of narcotics at that time. Appellant was placed under arrest for "possession of heroin in his system" and advised of his constitutional rights. A third man was sleeping in the living room; on him Officer Ridenour noticed marks and placed him under arrest. A search of the premises revealed a hypodermic needle and syringe belonging to Mona. No search warrant had been obtained prior to entering. After receiving the narcotics complaint about the house, Officer Ridenour testified that he intended at one time or another to enter the house to investigate for narcotics; but after they stopped Negrette and identified themselves as officers there was no longer time to obtain a search warrant because they knew that in the meantime those inside of the house would learn that the police were investigating the location. Doctors Gore and Peters each testified that on April 18, 1966, they examined appellant and in their opinion he was a narcotic addict.

Appellant testified that two men and a woman were at his house and one left to go to the store; he was lying in bed when someone knocked on the door; the woman asked who it was and a voice responded; as she opened the door the officers ran in without announcing themselves; the woman did not give the officers permission to enter; he objected to their entry and asked what they were doing there and they said they were going to search the house. He denied he was going

through withdrawals at the time and being under the influence of narcotics. He said he was taken to jail, booked on possession and about a half hour later taken to the infirmary; the officers took nothing from the house.

In a lengthy argument appellant contends that his commitment must be set aside because it was the direct result of an illegal entry and arrest. At the outset it should be noted that while appellant several times mentions illegal search and seizure there can be no such question here for the officers made neither search nor seizure relevant to appellant; no evidence against appellant was seized at the house or used against him. The officers simply observed that which was in plain sight—the numerous marks on appellant's inner arms and other symptoms indicating to them that "he was under the influence of a narcotic, he was suffering slight withdrawals . . . , that he was addicted to narcotics, heroin, and he was in danger." It is well settled that "mere looking at that which is open to view is not a 'search.'" (*People* v. *West,* 144 Cal.App.2d 214, 220 [300 P.2d 729] ; *People* v. *Jaurequi,* 142 Cal.App.2d 555, 561 [298 P.2d 896]; *People* v. *Terry,* 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381]; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855] ; *People* v. *Alvarez,* 236 Cal.App.2d 106, 112 [45 Cal.Rptr. 721].)

Appellant's main contention is that the exclusionary rules applicable to criminal cases (*Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933] ; *People* v. *Cahan,* 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513]) and automobile forfeiture cases (*One 1958 Plymouth Sedan* v. *Pennsylvania,* 380 U.S. 693 [14 L.Ed.2d 170, 85 S.Ct. 1246]) are controlling in a civil narcotic commitment proceeding.

The main reason for the imposition in criminal cases of the exclusionary rules, the basic purpose of which is to deter unconstitutional methods of law enforcement, is to prevent the state from profiting from its own wrongdoing. In *People* v. *Parham,* 60 Cal.2d 378 [33 Cal.Rptr. 497, 384 P.2d 1001], the court considered "the deterrent effect of the exclusionary rule not as a penalty but as derived from the principle that the state must not profit from its own wrong. (*Walder* v. *United States,* 347 U.S. 62 64-65 [98 L.Ed. 503, 506-507, 74 S.Ct. 354] ; *McDonald* v. *United States,* 335 U.S. 451, 456 [93 L.Ed. 153, 158-159, 60 S.Ct. 191] ; *People* v. *Martin,* 45 Cal.2d 755, 760 [290 P.2d 855].)" (P. 386.) Thus, in any case, civil or criminal, in which the state will profit from its objectionable conduct involving improper police activities, the exclusionary

rules seem to apply. In a criminal case the state benefits by convicting, incarcerating and punishing the defendant for his illegal acts, and penal in nature is the proceeding in the automobile forfeiture case; in these cases the reason for the imposition of the exclusionary rules is obvious. But this is not a criminal case. The provisions of law under which appellant was committed are civil in nature, purpose and effect; the commitment procedures thereunder are in the nature of special civil proceedings. (*In re De La O*, 59 Cal.2d 128, 150 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]; *In re Trummer*, 60 Cal.2d 658, 661 [36 Cal.Rptr. 281, 388 P.2d 177]; *People* v. *Victor*, 62 Cal.2d 280, 294 [42 Cal.Rptr. 199, 398 P.2d 391]; *In re Castro*, 243 Cal.App.2d 402, 407 [52 Cal.Rptr. 469]; *People* v. *Hill*, 249 Cal.App.2d 453, 457 [57 Cal.Rptr. 551].) The civil narcotic commitment laws (§ 3000 et seq., Welf. & Inst. Code) were not passed for the purpose of punishing those to be committed and treated thereunder, rather it was "the intent of the Legislature that persons addicted to narcotics, or who by reason of repeated use of narcotics are in imminent danger of becoming addicted, shall be treated for such condition and its underlying causes, and that such treatment shall be carried out for nonpunitive purposes not only for the protection of the addict, or person in imminent danger of addiction, against himself, but also for the prevention of contamination of others and the protection of the public. . . ." (Welf. & Inst. Code, § 3000.) The benefit of these laws and the proceedings thereunder primarily flows to the individual narcotic addict, and indirectly to society.

In *People* v. *Le Gerrette*, 245 Cal.App.2d 764 [54 Cal.Rptr. 304], defendant had been convicted of possession of narcotics but before sentence, criminal proceedings were suspended to ascertain if he was addicted. He was found to be addicted and was committed under section 3051, Welfare and Institutions Code. On appeal defendant raised the issue of unlawful search and seizure. Treating the appeal as one from the commitment order, the court said: "However, in such appeal he may base error only on the lack of jurisdiction of the trial court to institute commitment proceedings or the invalidity of the proceedings culminating in the order itself. Instead, defendant seeks to attack the admissibility of evidence in the criminal trial and what he contends to have been an unlawful search and seizure of which such evidence is the product.

" . . . . . . . . . . . .

"We hold that upon direct appeal from an order of com-

mitment under section 3051, the defendant may not question the sufficiency or legal admissibility of the evidence upon which the criminal conviction was based if the convicting court had jurisdiction of the subject matter and of the defendant as in the present instance." (P. 765.) ▋ While the issue raised in *Le Gerrette* was unlawful search and seizure, the situation is analogous to that at bar. Herein appellant seeks only to attack the legality of his arrest. He has not contested the validity of the commitment proceeding or asserted lack of jurisdiction of the trial court to institute the same, nor could he do so successfully on the record before us. The officers had reasonable cause to believe that appellant was addicted to the use of narcotics, or was in imminent danger of becoming addicted to their use. Under the circumstances they were authorized to take him into custody for his own best interests and protection. The sole issue at the trial was whether appellant was a drug addict or by reason of repeated use of narcotics was in imminent danger of becoming addicted. The procedural requirements were strictly followed. Thus, the jurisdiction of the committing court is unaffected by the legality of the arrest. (*People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633], *People* v. *Hill,* 249 Cal.App.2d 453, 457 [57 Cal.Rptr. 551].)

In *People* v. *Hill,* 249 Cal.App.2d 453 [57 Cal.Rptr. 551], defendant, as here, was committed under section 3102, Welfare and Institutions Code. Said the court of his assertion that there was no probable cause for his arrest: "This is not a criminal case. The commitment procedures are in the nature of special civil proceedings. [Citations.]

". . . .

"The officers had probable cause to arrest the appellant under the circumstances, *but in any event it is unimportant in this proceeding.* Even if the matter were a criminal case, the conviction would be unaffected by the lawfulness of the arrest. (*People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633] ; *Frisbie* v. *Collins,* 342 U.S. 519, 522 [96 L.Ed. 541, 545-546, 72 S.Ct. 509].)

". . . .

"To make the criminal law restrictions and rules applicable to the statutes in question would do violence to the legislative policy upon which the law is based and be wholly unwarranted." (Italics added; *People* v. *Hill,* 249 Cal.App.2d 453, 457-459 [57 Cal.Rptr. 551].)

The order is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1968. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.