[Crim. No. 12428.   In Bank.   Nov. 20, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED
RUDYARD MOORE, Defendant and Appellant.

Julius L. Rubinstein, under appointment by the Supreme Court, for Defendant and Appellant.

Richard S. Buckley, Public Defender, James L. McCormick and Gerald McC. Franklin, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, James H. Kline and Edward J. Horowitz, Deputy Attorneys General, for Plaintiff and Respondent.

PETERS, J.—On October 10, 1966, defendant was arrested for possession of heroin. He was taken to a jail infirmary, confined there, examined, and observed by a doctor, and on October 13, 1966, a petition was filed to commit him as a narcotic addict or as a person who is in imminent danger of becoming addicted to narcotics. (Welf. & Inst. Code, § 3100 et seq.) On October 26, the allegations of the petition were sustained after a hearing in the superior court. Defendant demanded a jury trial, and the jury found that he was in imminent danger of becoming an addict. Defendant was ordered committed to the Department of Corrections for placement at the California Rehabilitation Center at Corona, and he has appealed from the order of commitment.

The testimony of Officer Robison of the Los Angeles Police Department may be summarized as follows: At 10 a.m. on October 10, 1966, he observed defendant in a telephone booth on the side of a taco stand at the corner of Adams and Vic-

toria Streets. The officer had made several narcotics arrests in the area and stated that addicts go to this location to make purchases from the street peddlers. As the police car was driven into a parking lot adjacent to the taco stand, defendant appeared to be talking on the telephone, seemed to observe the police car, moved from a comfortable position in the telephone booth, and turned his back on the police car. Defendant appeared nervous. The officer thought that defendant "was trying to avoid" him and due "to the area and the surrounding circumstances . . . thought it was suspicious."

The officer left his car, went to the telephone booth, and asked defendant his name and several questions. He asked defendant if he had ever used narcotics in the past, and defendant said he had but not since he left jail in July. The officer then asked defendant if he might inspect the latter's arms. Defendant consented and removed his coat. The officer observed approximately 20 scabs, one of which appeared to be a fresh puncture mark. The officer then placed defendant under arrest for possession of heroin and advised him of his constitutional rights. In a subsequent conversation defendant said that he used narcotics infrequently. At the police station defendant told another officer that he was using two $5 balloons daily. Apparently, no heroin was found in defendant's possession.

The officer did not have a warrant to arrest defendant. The officer said he did not have any cause to arrest defendant prior to speaking to him and that if defendant had refused to talk to him or to remove his coat, "I don't know what I could have done. I don't think I could have forcibly restrained him there if he would have. . . . If we were talking and he said, 'I am not going to show you my arms,' this might have indicated to me he was trying to hide the fact he was using."

Defendant testified that the officers approached him in the telephone booth as he completed a telephone call to his employer, that the officer asked him to come out of the booth and get into the police car, that after he did so, a police officer turned the car around and drove about 25 yards behind the taco stand and commenced questioning him. His recollection of the questions asked was similar to that of Officer Robison. Defense counsel sought to question defendant as to whether he wanted to leave the police car at the time the officer asked him to remove his coat, and the deputy district attorney objected on the ground of lack of materiality. In arguing the objection, defense counsel made an offer to prove the state of mind of

defendant, which, assertedly, would show that the consent to remove the jacket was not voluntary. In sustaining the objection of the prosecutor and rejecting the offer, the court ruled that, although the state of mind of the officer might be relevant to the issue of probable cause to make an arrest, the state of mind of a defendant in giving consent was not relevant and that in determining whether a defendant voluntarily gave his consent to a search an officer may rely upon the objective facts.

The trial court denied a motion to suppress the evidence obtained by the officers. Subsequently, evidence was received that defendant suffered withdrawal symptoms while confined in the infirmary. The examining physician testified that as of the time of trial defendant no longer was suffering withdrawal symptoms and did not have a measurable tolerance to narcotics but that he had an emotional dependence on narcotics. The physician was of the opinion that defendant was in imminent danger of becoming addicted to narcotics.

The evidence relating to the arrest of defendant was received and the motion to suppress was determined at the hearing before the judge prior to the jury trial and not at the jury trial itself. The medical evidence and some of defendant's statements as to use of narcotics were received at both proceedings.

The guarantees against unreasonable searches and seizures as contained in the Fourth and Fourteenth Amendments are applicable to police officers seeking to enforce the criminal laws. (*Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933].)

The guarantees are also applicable to governmental officials seeking to enforce health and safety regulations. (*Camara* v. *Municipal Court,* 387 U.S. 523, 528 et seq. [18 L.Ed.2d 930, 935, 87 S.Ct. 1727] [overruling *Frank* v. *Maryland,* 359 U.S. 360 [3 L.Ed.2d 877, 79 S.Ct. 804]] ; *See* v. *City of Seattle,* 387 U.S. 541, 542 et seq. [18 L.Ed.2d 943, 945, 87 S.Ct. 1737] ; cf. *Parrish* v. *Civil Service Com.,* 66 Cal.2d 260, 265 et seq. [57 Cal.Rptr. 623, 425 P.2d 223].)

Thus, the amendments are enforced when officers are seeking to apprehend and obtain evidence against robbers (*Stoner* v. *California,* 376 U.S. 483 [11 L.Ed.2d 856, 84 S.Ct. 889]), burglars (*People* v. *Burke,* 61 Cal.2d 575 [39 Cal.Rptr. 531, 394 P.2d 67]), abortionists (*People* v. *Schaumloffel,* 53 Cal.2d 96 [346 P.2d 393]), moonshiners (*Chapman* v. *United States,* 365 U.S. 610 [5 L.Ed.2d 828, 81 S.Ct. 776] ; *Jones* v. *United*

*States,* 357 U.S. 493 [2 L.Ed.2d 1514, 78 S.Ct. 1253]), housewives who possess dirty books (*Mapp* v. *Ohio, supra,* 367 U.S. 643), and owners of residential properties who maintain nonconforming structures or substandard fire escapes (*Camara* v. *Municipal Court, supra,* 387 U.S. 523; *See* v. *City of Seattle, supra,* 387 U.S. 541). The only reason that has been suggested to permit police officers or other governmental officials to ignore the unequivocal demand of the Fourth and Fourteenth Amendments when they are enforcing the laws as to narcotic addicts is that the narcotic addiction program is for the benefit of the individual addict as well as society. But, our penal system seeks rehabilitation as well as penalty; our administrative enforcement of housing laws may benefit the owner and resident as well as the neighborhood; and the benefit to the narcotic addict furnishes no basis to ignore the fundamental guarantees against unreasonable searches and seizures.

■ Accordingly, police officers who violate the fundamental guarantees in order to apprehend and obtain commitment of narcotic addicts are no less guilty of violating the basic law of the land than officers or other governmental officials who violate the Fourth and Fourteenth Amendments for the purpose of the apprehension and conviction of criminal offenders or violators of the health and safety laws.

■ It is well settled that evidence obtained by an unlawful search and seizure by police officers is inadmissible in criminal trials. (*Mapp* v. *Ohio, supra,* 367 U.S. 643; *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].) The exclusionary rule is also applicable to forfeiture proceedings, which, although technically classified as civil proceedings, must be considered criminal proceedings for purposes of the Fourth Amendment. (*Plymouth Sedan* v. *Pennsylvania,* 380 U.S. 693, 700 [14 L.Ed.2d 170, 174, 85 S.Ct. 1246]; *People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 96-97 [41 Cal.Rptr. 290, 396 P.2d 706]; see Annot. 5 A.L.R.3d 670, 680-682.) There appears to be a conflict in the few cases which have considered whether the exclusionary rule is generally applicable to proceedings civil in nature between private litigants. (See Annot., *supra,* 5 A.L.R.3d 670, 676-680.)

There are statements in *People* v. *Gonzales,* 256 Cal.App. 2d 50, 55 [63 Cal.Rptr. 581]; *People* v. *Chacon,* 253 Cal.App. 2d 1056, 1059 [61 Cal.Rptr. 807], and *People* v. *Hill,* 249 Cal.App.2d 453, 458 [57 Cal.Rptr. 551], relied upon by the Attorney General, to the effect that a commitment is not affected by the lawfulness of an arrest. But this rule is also

applicable to criminal cases. ■ The exclusionary rule relates to admissibility of evidence, not to the validity of commitment, and it is settled that a defendant who has been subjected to illegal arrest, search or seizure does not, by virtue of such illegality, gain immunity from punishment for the offense for which he was arrested or which was disclosed by the search. (*People* v. *Valenti,* 49 Cal.2d 199, 203 [218 P.2d 633].) Accordingly, the above statements in *Gonzales, Hill,* and *Chacon* do not reach the issue of admissibility of illegally obtained evidence in civil cases.[1]

There are also general statements in *Gonzales* and *Hill* to the effect that to make criminal law restrictions and rules applicable to narcotic addict commitment proceedings would do violence to the legislative policy upon which the law is based and be wholly unwarranted. (*People* v. *Gonzales, supra,* 256 Cal.App.2d 50, 55; *People* v. *Hill, supra,* 249 Cal.App.2d 453, 459.) Those statements are clearly too broad. ■ Although the commitment procedures set up by the narcotic addict statutes are civil in nature (*In re De La O,* 59 Cal.2d 128, 156 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]), it is clear that the proceeding has some of the features pertinent to a criminal case in view of the facts that the state is the defendant's opponent, that the proceeding is commenced on petition of the district attorney (Welf. & Inst. Code, §§ 3100, 3100.6), that the defendant is entitled to be present at the hearing and to be represented by counsel at all stages of the proceeding (Welf. & Inst. Code, § 3104), that if he is financially unable to employ counsel he is entitled to appointed counsel (Welf. & Inst. Code, § 3104) and that his liberty is at stake. On the basis of these considerations, we have recognized the criminal features of the proceeding and held that persons involuntarily committed to the program have the right to a free transcript on appeal, a rule ordinarily applied in criminal cases. (*People* v. *Victor,* 62 Cal.2d 280, 288-289 [42 Cal.Rptr. 199, 398 P.2d 391].)

■ Whether any particular rule of criminal practice should be applied in a narcotic addict commitment proceeding depends upon consideration of the relationship of the policy underlying the rule to the proceeding. (Cf. *In re Gault,* 387

---

[1] In *People* v. *Gonzales, supra,* 256 Cal.App.2d 50, 53, the defendant urged that the exclusionary rule was applicable in narcotic addiction proceedings. The court held that there was no search, and although it proceeded to discuss the exclusionary rule, it did not hold the rule inapplicable except insofar as the statements discussed in this opinion may be said to so determine.

U.S. 1, 13-14 [18 L.Ed.2d 527, 538, 87 S.Ct. 1428].) ▮ The basic purpose of the exclusionary rule is to deter unconstitutional methods of law enforcement. (*Elkins* v. *United States,* 364 U.S. 206, 217 [4 L.Ed.2d 1669, 1677, 80 S.Ct. 1437]; *Mapp* v. *Ohio, supra,* 367 U.S. 643, 656 [6 L.Ed.2d 1081, 1090, 81 S.Ct. 1684]; *People* v. *Parham,* 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001]; *People* v. *Cahan, supra,* 44 Cal.2d 434, 445 et seq.) The exclusionary rule is not a penalty but is derived from the principle that the state must not profit from its own wrong. (*People* v. *Parham, supra,* 60 Cal.2d 378, 386.) By denying any profit from the unconstitutional methods of law enforcement, it is to be anticipated that law enforcement officials will have no incentive to engage in such methods.

It has been suggested that the narcotic addict proceeding is for the benefit of the addict and that therefore the state does not profit from its wrong when evidence obtained in violation of the Fourth and Fourteenth Amendments is admitted in such a proceeding. Certainly, the proceeding is in part for the benefit of the addict, but this is not determinative. Rehabilitation is one of the prime goals of our penal system, and the fact that the end result of incarceration in jail may be beneficial to the inmate furnishes no ground for the view that the state does not profit by using evidence to obtain criminal convictions. ▮ Narcotic addict proceedings involve a loss of liberty, and the proceedings are for the benefit of society as well as the addict. (Welf. & Inst. Code, § 3000; *People* v. *Victor, supra,* 62 Cal.2d 280, 292; *People* v. *Ortiz,* 61 Cal.2d 249, 255 [37 Cal.Rptr. 891, 391 P.2d 163]; *In re De La O, supra,* 59 Cal.2d 128, 148.) Whatever the label that may be attached to those proceedings, it is apparent that there is a close identity to the aims and objectives of criminal law enforcement (cf. *People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, 96), and we are satisfied that to hold unconstitutionally obtained evidence admissible in the proceedings would furnish an incentive to violate the Fourth and Fourteenth Amendments. Accordingly, we hold that the exclusionary rule is applicable to such proceedings.

We turn next to the question whether there was illegal conduct on the part of the officers. ▮ Although circumstances short of probable cause to make an arrest may still justify an officer in stopping a pedestrian on the streets for questioning, a police officer may not detain and question a person when there are no circumstances which would indicate to a reasonable man in a like position that such a course was

necessary to the proper discharge of the officer's duties. (*People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, 95-96; see *People* v. *Stout,* 66 Cal.2d 184, 191-192 [57 Cal.Rptr. 152, 424 P.2d 704]; *People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]; cf. *Terry* v. *Ohio,* 392 U.S. 1, 8 et seq. [20 L.Ed.2d 889, 898, 88 S.Ct. 1868].) ▮ It is clear that the officer detained defendant for questioning, and the only suspicious circumstances relied upon by the officer were that the area was one where narcotic transactions had taken place in the past and that defendant upon seeing the officers' car turned his back on them, moved from a comfortable position, and appeared nervous. Defendant was talking on a telephone in a booth at ten in the morning, and there seems little to distinguish defendant from any other citizen who may have been making a telephone call at that time and place. To hold that police officers should in the proper discharge of their duties detain and question all persons in that location or all those who act nervous at the approach of officers would for practical purposes involve an abrogation of the rule requiring substantial circumstances to justify the detention and questioning of persons on the street. ▮ Since the officers were not justified in detaining and questioning defendant, the evidence obtained when in the course of the questioning he permitted them to inspect his arm was not admissible. (*People* v. *One 1960 Cadillac Coupe, supra,* 62 Cal.2d 92, 95-96; cf. *People* v. *Henry,* 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557].)

▮ The testimony of the examining physician that defendant suffered withdrawal symptoms while confined in the infirmary and that in his opinion based on his observations during the confinement defendant was in immediate danger of becoming addicted to narcotics was inadmissible as "fruit of the poisonous tree."

▮ Evidence is not excluded merely because it would not have been obtained but for the illegal search if the connection between such evidence and the illegal search has " ' 'become so attenuated as to dissipate the taint.' " If, however, the connection is not so attenuated and the evidence has been " ' 'come at by exploitation of that illegality,' " then it is excludable. (*Wong Sun* v. *United States,* 371 U.S. 471, 487, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407]; *People* v. *Bilderbach,* 62 Cal.2d 757, 766 [44 Cal.Rptr. 313, 401 P.2d 921].)

▮ Section 3100.6 of the Welfare and Institutions Code provides that a peace officer, who has reasonable cause to

believe that a person is addicted to the use of narcotics or by reason of repeated use is in imminent danger of becoming addicted, may take the person, for his best interest and protection, to the county hospital or other suitable medical institution; that within 24 hours after admission to the institution a physician shall examine the person and may detain the person for 48 additional hours for further examination; and that if it is concluded after such examination that the person is addicted or is in imminent danger of becoming addicted, the physician shall prepare an affidavit to that effect and the district attorney may petition the superior court for commitment.

It is clear that under the code section the examinations by the physician are the direct result of the officer's determination based on reasonable cause that the person is addicted or in imminent danger of becoming addicted to narcotics. When the officer's determination is based solely on evidence obtained in violation of the Fourth and Fourteenth Amendments, when no other evidence furnishes reasonable cause, and when the basis of the confinement for examination is the officer's determination, it cannot be said that the connection between the physician's testimony and the unlawful conduct has become so attenuated as to dissipate the taint.

Moreover, if the physician's testimony in such a case were admitted, the policy underlying the exclusionary rule of preventing the state from profiting by its own wrong would be largely defeated. The testimony of physicians who have examined the defendant will ordinarily be sufficient, without that of arresting officers, to warrant commitment, and thus officers will not be deterred from unconstitutional law enforcement.

■■■ Defendant relying upon *Robinson* v. *California*, 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417], contends that the involuntary commitment of narcotic addicts for treatment is invalid as a cruel and unusual punishment where the addiction is unaccompanied by any act of possession or use and where it is not shown that the treatment will benefit the addict. Defendant points out in this connection that section 3108 of the Welfare and Institutions Code which provides for a jury trial provides only for determination by the jury of the issue of addiction and not for the further question whether the defendant is amenable to successful treatment.

We rejected a similar contention in *In re De La O, supra,* 59 Cal.2d 128, 134-150, concluding that the statutory scheme shows that the program established by the Legislature was one for the quarantine, treatment, and rehabilitation of narcotic

addicts rather than a program of penal sanctions and that confinement thereunder does not constitute cruel and unusual punishment within *Robinson*. Defendant has not shown any valid reason to depart from our conclusion. The absence of any criminal conviction serves to emphasize and not rebut the civil purpose, mechanism, and operation of the program and to further the conclusion that the proceedings are not penal within *Robinson*. With regard to the claim that the jury should be permitted to determine whether defendant will benefit from treatment, the Legislature could reasonably conclude that it was unreasonable to attempt such a determination until some efforts at treatment had been made. The Legislature has provided that after 60 days following receipt at the facility of a person the Director of Corrections may order the person discharged if he finds that due to excessive criminality or ''other relevant reason,'' the person is not a fit subject for ''confinement or treatment.'' (Welf. & Inst. Code, § 3109.)

Defendant also complains of an instruction to the effect that the state need prove addiction or imminent danger of addiction by a preponderance of the evidence. He urges that the burden should be upon the state to prove beyond a reasonable doubt, the rule applied in criminal cases. A similar contention was rejected in *People* v. *Valdez*, 260 Cal.App.2d 895, 902-904 [67 Cal.Rptr. 583]. The proceedings, as we have seen, are fundamentally civil in nature, and no sound reason appears to depart from that ordinary civil rule here.

When the evidence in the instant case obtained as a result of the unlawful conduct is excluded, it is apparent that there is insufficient evidence to sustain the commitment.

The order of commitment is reversed.

Traynor, C. J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the order of commitment.