[Crim. No. 15787.   Second Dist., Div. One.   Apr. 25, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RODELL EUGENE CLARK, Defendant and Appellant.

Frank P. Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

THOMPSON, J.—Prior to March 12, 1968, police had received information from what was described by the arresting officer as a "reliable informant" that "Sycamore Sonny" was using and dealing in narcotics at 1801½ Sycamore Avenue in Los Angeles. The informant had stated that the suspect drove a blue Cadillac. Armed with the information, officers staked out the four-unit apartment building in which 1801½ Sycamore Avenue was located. On several occasions, they observed appellant leave the building and drive away in a blue Cadillac. On March 12, the officers saw two women go into the building and return from it. One of the officers overheard one of the women say that they were "hurting," a word which in the parlance of the addict denotes the need for narcotics. The officers followed the women away from the building and stopped them. The women informed the officers that they were addicts and had gone to the building to obtain narcotics from appellant. The officers returned to their stakeout of the apartment building. On March 13, they saw appellant drive his blue Cadillac into the driveway of the building and park it there. The officers approached the car and told appellant not to move. They noticed fresh blood and old "tracks" on his left hand. "Tracks" are scar tissue along a vein indicating long continued self-dosage of narcotics. The officers who were experienced in narcotics matters also noted from appellant's eyes that he was in a state of narcotics withdrawal.

Appellant was asked by the officers if he used narcotics, and he replied, "No." The officers examined his arm further and saw three puncture wounds and a track. Appellant was then apprehended as an addict. At the time of appellant's apprehension he asked for a lawyer but was told that he could not call one until after he was booked. Appellant was examined further at the police station and then transported to the hospital while still in custody. Several times he asked that an attorney be present while he was examined at the hospital. The request was refused and appellant was examined by a physician who did tell him that one of the purposes of the examination was to determine his status as an addict, that he could refuse to answer questions, and that his answers might be used against him. The physician, who was an expert in narcotics, found a number of tracks and fresh puncture marks on appellant's arms and hands. He also determined from blood pressure and the appearance of appellant's eyes that appellant was then suffering withdrawal symptoms.

On March 14, 1968, a petition was filed to commit appellant as a narcotics addict pursuant to Welfare and Institutions Code section 3100 et seq. On April 18, appellant was found to be an addict and was committed to the director of corrections for placement. Appellant's ensuing motion for a jury trial was granted. After several continuances, the matter was set for hearing on May 24. At that time, appellant waived a jury and the matter proceeded to trial before the judge alone.

Appellant moved at trial to exclude evidence upon the ground that his original apprehension was illegal causing all evidence flowing from it to be barred and upon the further ground that he was improperly denied the presence of counsel during the medical examination. The motion was denied. The examining physician testified that appellant was addicted to narcotics, stating that his conclusion was based solely upon his physical examination of appellant and not upon appellant's statements to him.

Appellant was adjudged an addict and ordered committed. This appeal followed.

Appellant argues that the evidence upon which his commitment is based was inadmissible because: (1) it was the product of an unlawful arrest made without reasonable cause; and (2) appellant was denied the right to presence of his counsel during examination by the physician who testified to the diagnosis of addiction.

## Legality of Arrest

We conclude that there is substantial evidence in the record to sustain the court's inherent finding that there was probable cause to question appellant and to arrest him.[1] The officers had been told by an informer characterized by them as "reliable" that appellant was using and dealing in narcotics. While no further evidence was presented to sustain the conclusion of "reliability" of the informant none was necessary in the particular matter now before us. Information from an unreliable informant can constitute probable cause to arrest if it is sufficiently corroborated. (*People* v. *Miller,* 252 Cal.App.2d 877 [60 Cal.Rptr. 791].) Here there was adequate corroboration. The officers had overheard two women say that they were "hurting" as they went to appellant's apartment. The conversation translated from street talk told the officers that the women were seeking narcotics. Those same

---

[1] Constitutional guarantees against unreasonable search apply in narcotics commitment proceedings. (*People* v. *Moore,* 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800].)

women when questioned by the officers after they left the apartment said that they had gone to the apartment to obtain narcotics from appellant. That information, whether or not it was sufficient corroboration of the informer to justify arrest, was adequate to justify the officers in stopping appellant to question him. (*People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal. Rptr. 18, 380 P.2d 658].) When the officers stopped appellant they observed in plain sight the clinching items of corroboration—the blood on his hand and the "track" marks.

### RIGHT TO COUNSEL AT PHYSICAL EXAMINATION

An argument similar to that made by appellant here, that he was by reason of his request entitled to the presence of counsel during the physician's examination of him, was raised in *People* v. *Garcia,* 268 Cal.App.2d 712 [74 Cal. Rptr. 103]. In *Garcia,* the asserted claim of error was the failure to give a *Miranda* warning before the physical examination which was a prelude to a narcotics commitment. The court rejected the claim. (See also *People* v. *Lipscomb,* 263 Cal.App.2d 59 [69 Cal.Rptr. 127].) Since requirement of a *Miranda* warning depends upon a right to counsel, the precedent of *Garcia* and *Lipscomb* dictates that we reject appellant's claim that he had such a right upon demand.

We have also considered the impact of *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], upon a suspect's right to counsel when he is examined by a state-retained physician preliminary to a proceeding to commit him for addiction pursuant to Welfare and Institutions Code section 3100 et seq. The Fifth Amendment privilege against self-incrimination is inapplicable to a compulsion that a suspect exhibit his body.[2] (*United States* v. *Wade, supra.*) The issue then is whether the physical examination conducted prior to a narcotics commitment proceeding is a "critical stage" of the proceeding requiring counsel as is a lineup or is "noncritical" as is the taking of an exemplar of handwriting where the suspect is charged with forgery. (*Gilbert* v. *California, supra.*) We conclude that in the sense the term is used by the United States Supreme Court, the physical examination was a "noncritical" state of the proceedings against appellant. As in the case of a handwriting exemplar, the physical examination was the basis of a scientific conclu-

---

[2]The examining physician testified at trial that he based his conclusion solely on his physical examination and not upon statements of appellant.

sion which the appellant could have attacked through the ordinary processes of cross-examination and the use of his own experts. There were not present in the examination the vagaries of eyewitness examination emphasized by the United States Supreme Court in its holding that a lineup is of such a critical nature as to require the presence of counsel unless intelligently waived. Nor was there the possibility of taint of the testimony of all witnesses to the fact of identification that is present in a lineup. Appellant was free to select his own experts to testify to his claimed state of non-addiction. Under such circumstances, the *Wade-Gilbert* rule is not here applicable.

The order appealed from is affirmed.

Wood, P. J., and Lillie, J., concurred.