[Crim. No. 8910. Fourth Dist., Div. One. Nov. 9, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE CALVIN ALDERSON, Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, and J. Perry Langford for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, and Harley D. Mayfield, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

WIENER, J.—We decide in this appeal that (1) this court may review the denial of defendant's motion under Penal Code section 1538.5[1] made during his preliminary examination at the municipal court followed by his plea of guilty in that court, and (2) the evidence obtained was a direct product of an unlawful detention. We reverse the judgment.

*Procedural Background*

A complaint filed in the municipal court charged the defendant, Lawrence Calvin Alderson, with burglary (§ 459), receiving stolen property (§ 496, subd. 1), cultivation of marijuana (Health & Saf. Code, § 11358) and grand theft (§ 487, subd. 1). The complaint also charged prior convictions of robbery (§ 211) and assault with intent to commit robbery (§ 220).

At his preliminary hearing, the defendant's motion to suppress evidence pursuant to section 1538.5 was denied. On the same day, pursuant to a plea bargain providing for a dismissal of the other three counts, the defendant pled guilty to receiving stolen property and admitted the prior convictions. After certification to the superior court, he

---

[1]All references are to the Penal Code unless otherwise specified.

was sentenced to serve four years in state prison. His notice of appeal requests review of the denial of his motion to suppress evidence.

*Facts Relating to the Motion to Suppress*

On August 6, 1977, about 9 to 9:15 a.m., Escondido Police Officer Allen was on patrol in the third most burglarized beat in the City of Escondido. Traveling southbound on Tulip Avenue, he observed two black males wearing watchcaps in a 1964 black Ford Thunderbird automobile proceeding northbound. When Allen saw the vehicle, a couple of things came to his mind. He recalled a purse snatch two or three weeks earlier in which the suspect had been a black male, and realized he had never seen the vehicle or its occupants before. He then made a U-turn to stop the vehicle and ascertain the identity of the occupants. After losing sight of it, he obtained assistance from the officer working the beat to the north. The unoccupied vehicle was located parked in a driveway at 861 West Third Avenue. Officer Allen ran a check of the license number. He learned the car was not stolen and was registered to an owner from out of the city, he believed in the Los Angeles area.

Officer Allen later observed the vehicle with one occupant as it came off Tulip Avenue, turn east on Third Avenue, and into the driveway at 861 West Third Avenue. He pulled up behind it. As Allen stopped his vehicle, he saw a bald tire on the Thunderbird.

Allen approached the driver, asked for his driver's license, and pointed out the bald tire. He started to fill out a field interrogation card. The defendant first claimed his address was that written on the back of his driver's license, but upon further questioning, disclosed his address as 861 West Third Avenue. Allen then ran a warrant check and learned there was an outstanding warrant for defendant's arrest. He estimated the time at 5 to 15 minutes, probably about 10, from his first contact with the defendant until the warrant check was confirmed.

Another officer arrived to assist Officer Allen. The defendant was handcuffed to be taken to the police station. The defendant asked if he could go into the residence to turn off his stereo. Because there was another suspect unaccounted for, Officer Allen told the defendant both officers would have to accompany him into the residence. The defendant agreed. The consequent entry revealed the subject contraband.

*Defendant's Motion to Suppress Evidence*
*May Be Reviewed on This Appeal*

The holding in *Ramis* v. *Superior Court* (1977) 74 Cal.App.3d 325 [141 Cal.Rptr. 374] that the ruling on the motion to suppress evidence at the preliminary hearing is not reviewable on appeal from the superior court judgment is not dispositive of the issue before us. In *Ramis,* after the denial of the section 1538.5 motion at the preliminary examination, the defendant pled guilty at the superior court. He did not renew his motion to suppress (§ 1538.5, subd. (i)) or move to dismiss the information (§ 995) in that court. The *Ramis* court relied on two basic principles of efficient judicial administration. "[F]irst . . . except in extraordinary circumstances, a litigant is not permitted to bypass a remedy in a lower court and reserve his grievance for submission to a higher court. [Citations.] . . ." and "[S]econd . . . an appeal brings before the appellate court for review only those matters which were before the lower court when it made its decision. [Citations.] . . ." (*Id.,* at p. 332.)

In the present case, the plea of guilty was made at the municipal court which is expressly authorized under section 859a to accept the plea.[2] The statute does not carve out an exception for those who may wish to challenge evidence under section 1538.5, subdivision (f) at the preliminary hearing to preclude them from pleading guilty at the municipal court.

Section 1538.5, subdivision (m) allows for further review on appeal of a search or seizure notwithstanding such judgment of conviction is based upon a plea of guilty, provided "that at some stage of the proceedings prior to conviction [the defendant] has moved for the return of property or the suppression of the evidence."

The defendant satisfied that requirement by his motion at the preliminary examination. The statutory scheme after his plea of guilty and certification to the superior court does not include another motion to suppress. The renewal of the motion under section 1538.5, subdivision (i) pertains to only those cases in which the defendant "was held to answer at the preliminary hearing, or if the property or evidence relates to a felony

[2]Penal Code section 859a provides in pertinent part: "If the public offense charged is a felony not punishable with death, . . . while the charge remains pending before the magistrate and when his counsel is present, the defendant may plead guilty to the offense charged . . .; and upon such plea of guilty . . . the magistrate may then . . . certify the case, including a copy of all proceedings therein and such testimony as in his discretion he may require to be taken, to the superior court, and thereupon such proceeding shall be had as if such defendant had pleaded guilty in such court. . . ."

offense initiated by indictment. . . ." Neither condition applies to this defendant.

Since we are without case precedent, we accordingly turn to the applicable rules of statutory construction for guidance in our task of interpretation.

■ "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] ■ We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation]; 'a construction making some words surplusage is to be avoided.' [Citation.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224].) ■ With the foregoing principles in mind, we conclude that to deny the defendant his right of review of the validity of the search and seizure would be contrary to the express language of the statute and the cited, basic rules of statutory construction.

■ *The Evidence Obtained Was a Direct Product of the Unlawful Detention*

The basis for the denial of defendant's motion to suppress was stated as follows:

"THE COURT: I feel there was no probable cause to make an arrest or even stop the vehicle, but I think the vehicle having been stopped and under all of the totality of the circumstances, the officer had a right to go up and particularly after seeing a tire, to do what then transpired.

"And I think that there was consent. I don't think there was a detention when he's out in his driveway just having gotten out of the car. . . ."

The magistrate was correct in ruling the officer lacked sufficient cause to stop the defendant's vehicle. ■ "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation] to suspect the same criminal activity and the same involvement by the person in question [fn. omitted]. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]" (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].)

■ The fact that the defendant was driving through a high burglary area at 9 to 9:15 a.m. is not sufficient to justify police interrogation. (*People* v. *Moore* (1968) 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800].) The officer had no reason to believe the car was stolen. The additional fact that an undescribed black man had committed a theft in the area two or three weeks previously does not contribute an element of criminal activity involving this defendant. By Allen's own admission, the defendant was stopped for the purpose of completing a field interrogation report only and he did not even detect the bald tire vehicle equipment violation until after the stop had been made.

The distinction which the magistrate attempts to make between the vehicle stop and the pedestrian detention is not proper. Since the circumstances did not justify a stop of the defendant's automobile, they likewise did not authorize his detention as he alighted from it.

■ Assuming, however, the observation of the bald tire permitted some communication with the defendant, the officer's inquiry must be reasonably related to the equipment violation. (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 538 [119 Cal.Rptr. 315, 531 P.2d 1099].) "The officer may require the driver to identify himself, produce his driver's license and the registration certificate for the vehicle, and he may interrogate with respect to the violation or violations which he has observed. Absent some suspicious circumstance, he may not search the driver or the vehicle [citations], and he may not conduct an exploratory interrogation

designed to elicit incriminating information wholly unrelated to the matter at hand. [Citations.]" (*People* v. *Grace* (1973) 32 Cal.App.3d 447, 452-453 [108 Cal.Rptr. 66].)

Officer Allen made no effort whatsoever to inspect the supposedly bald tire or any other aspect of the mechanical condition of the vehicle. (See Veh. Code, § 2806.) The record before us which reveals no suspicious circumstances, no criminal conduct and no verified mechanical problems with the defendant's automobile does not justify a check for outstanding warrants.

There is no support for the magistrate's conclusion that there was no detention of the defendant. The Attorney General does not contend the intrusion involved merely a "contact." (See *In re Tony C.*, *supra*, 21 Cal.3d 888, 895.) The defendant was not free to leave at will. The stopping must have been related to a suspicion of criminal activity thereby causing the officer to check for outstanding warrants. (*Id.*, at p. 895.)

The magistrate's finding of consent was combined with his conclusion there was no illegal detention. The defendant's consent to the entry of the house, given while he was handcuffed as a result of an illegal detention, is vitiated and cannot justify the search. (See *People* v. *Horton* (1971) 14 Cal.App.3d 930, 934 [92 Cal.Rptr. 666]; *People* v. *Grace*, *supra*, 32 Cal.App.3d 447, 454.)

The evidence obtained was a direct product of the unlawful detention. The motion to suppress should have been granted.

The judgment is reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied November 27, 1978.