[No. C004206. Third Dist. Feb. 26, 1990.]

LEONARD FINKELSTEIN, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Appellant;
FRANCHISE TAX BOARD, Real Party in Interest and Appellant.

## COUNSEL

John K. Van de Kamp, Attorney General, Richard M. Frank, Paul H. Dobson, Shelley Mydans and Susan P. Underwood, Deputy Attorneys General, for Defendant and Appellant and for Real Party in Interest and Appellant.

Gary P. Reynolds and Darrell S. Steinberg for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—We hold that evidence obtained in a governmental employer's search of an employee's private briefcase should not be excluded in this disciplinary proceeding before the California State Personnel Board (Personnel Board). In reaching this latter conclusion, we distinguish on its facts our recent decision in *Dyson* v. *State Personnel Bd.* (1989) 213 Cal.App.3d 711 [262 Cal.Rptr. 112] (review den.).

## Factual and Procedural Background

Plaintiff was a Program Specialist I in the New York City office of the California Franchise Tax Board (Tax Board) where he was responsible for auditing Fortune 500 companies on the east coast to determine their compliance with California's tax laws.

Over the years plaintiff had performed detailed audits of a major corporation. In the course of that work he became acquainted with the corporation's tax compliance manager, Reginald Chitty. Chitty's corporation filed a $1 million tax refund claim with Tax Board.

While that claim was pending and while plaintiff was working on that corporation's records, Chitty approached plaintiff regarding a real estate investment opportunity in North Carolina. Plaintiff and Chitty entered into a written joint venture agreement under which plaintiff invested $10,000. This transaction was strictly personal and was unrelated to Chitty's corporation.

In August 1985 plaintiff's supervisor, Michael Duffel, was responsible for relocating Tax Board's New York City office to a new building. As part of that relocation, Tax Board was replacing its furniture, filing cabinets, and desks. During the week of the move, Duffel notified his staff to put all confidential taxpayer materials in boxes which would be labeled in the evening. (See Rev. & Tax. Code, §§ 19282, 26451.) The employees were told to "clear out everything that was confidential." According to Duffel, "During the week of August 26th, we were at that point in our old office going through all the desks and all the file cabinets that were to be discarded, to make sure that no confidential information concerning any taxpayers was contained within that equipment." Duffel notified his staff that all confidential taxpayer documents were to be placed in the boxes and not in attache cases or in anything that could be touched by the movers. He told his staff that the boxes would be labeled at night.

One evening shortly before the move, Duffel searched his employees' desks to make sure all confidential material had been removed. He did not tell his employees he would be making this search.

Under his desk plaintiff had a briefcase which he had purchased with his own funds. Another auditor had two briefcases under his desk. Without obtaining the owners' permission, Duffel searched the briefcases. In plaintiff's briefcase Duffel discovered the joint venture agreement between plaintiff and Chitty who Duffel knew was the tax manager of the company claiming the tax refund. Duffel found no Tax Board information.

Duffel made a copy of the joint venture agreement and presented it to his supervisor. Had he not searched plaintiff's briefcase, he would "possibly not" have discovered the agreement.

Plaintiff expected that the joint venture agreement in his briefcase would remain private and undisclosed.

As pertinent to this appeal, Tax Board dismissed plaintiff on three statutory grounds relating to the joint venture agreement. (Gov. Code, § 19572, subds. (q), (r), (t).)[1] Tax Board stated that plaintiff's entry into the joint venture and his subsequent failure to report it to his supervisor violated Government Code section 19990 and Tax Board policy.[2]

Plaintiff then had a hearing before Personnel Board's administrative law judge (ALJ) at which plaintiff moved to exclude evidence of the joint venture. The ALJ denied the motion, apparently reasoning that the search of plaintiff's briefcase was lawful. Personnel Board upheld plaintiff's dismissal on all grounds.

Plaintiff then filed this petition seeking to overturn Personnel Board's decision. The trial court found the briefcase search violated plaintiff's Fourth Amendment rights under *O'Connor* v. *Ortega* (1987) 480 U.S. 709 [94 L.Ed.2d 714, 107 S.Ct. 1492]. As a remedy the court applied the exclusionary rule and issued a peremptory writ which, as pertinent, directed the Personnel Board to dismiss the charges relating to the joint venture.

Tax Board and Personnel Board appeal contending (1) there was no violation of plaintiff's constitutional rights; and (2) even if the search was unlawful the exclusionary rule should not be applied. We need not decide the first issue because the latter claim has merit. We shall therefore reverse the judgment.

---

[1] Government Code section 19572 provides in pertinent part: "Each of the following constitutes cause for discipline of an employee . . . [¶] (q) Violation of this part or board rule. [¶] (r) Violation of the prohibitions set forth in accordance with Section 19990. [¶] . . . [¶] (t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to the appointing authority or the person's employment."

[2] Government Code section 19990 provides in pertinent part that "A state officer or employee shall not engage in any employment, activity, or enterprise which is clearly inconsistent, incompatible, in conflict with, or inimical to his or her duties as a state officer or employee."

## DISCUSSION

*The Exclusionary Rule Should Not Be Applied Because It Would Not Have Deterred This Search Which Was Not Predicated on Employee Misconduct.*

The parties dispute whether Duffel's search of plaintiff's briefcase violated plaintiff's rights under the Fourth Amendment to the United States Constitution and under article I, section 1 of our state Constitution.

In particular, the parties disagree whether *O'Connor* v. *Ortega, supra,* 480 U.S. 709, authorizes the briefcase search. In *O'Connor,* a plurality of the high court[3] concluded a governmental employer does not need a warrant or probable cause to conduct a reasonable employment-related search of an employee's "workplace." (*Id.,* at pp. 722-723 [94 L.Ed.2d at pp. 726-727].) Rather, "public employer intrusions on the constitutionally protected privacy interests of government employees for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances. Under this reasonableness standard, both the inception and the scope of the intrusion must be reasonable . . . ." (*Id.,* at pp. 725-726 [94 L.Ed.2d at p. 728] lead opn. of O'Connor, J.)

The parties disagree about whether plaintiff's personal briefcase was within the "workplace" at all and, even if it was, whether Duffel's search was reasonable. However, we need not decide these issues, because even upon the assumption the search was unlawful, the evidence found in the briefcase was properly admitted in the disciplinary proceeding before the Personnel Board. We shall therefore assume for the sake of argument, and without deciding the question, that the briefcase search was unlawful under both state and federal Constitutions.

The pivotal question is whether the trial court properly applied the exclusionary rule. ■■ ■ ■ We conclude it did not because the exclusionary rule will not deter searches such as Duffel's which are not predicated on employee misconduct.[4]

---

[3] Justice O'Connor's lead opinion was joined by the Chief Justice and Justices White and Powell. Justice Scalia filed a concurring opinion and Justice Blackmun dissented joined by Justices Brennan, Marshall, and Stevens.

[4] Tax Board erroneously suggests the exclusionary rule applies only if it is required by federal law. Tax Board cites *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], which interpreted article I, section 28, subdivision (d) of the state Constitution. By its own terms, section 28, subdivision (d) applies to *criminal prosecutions,* which this is not. Thus, we consider both federal and California law.

The leading California case is *Emslie* v. *State Bar* (1974) 11 Cal.3d 210 [113 Cal.Rptr. 175, 520 P.2d 991], in which our Supreme Court considered, albeit in dictum, whether the exclusionary rule should be applied in a State Bar disciplinary proceeding. There a search conducted by law enforcement officers revealed evidence an attorney had committed burglaries. (*Id.*, at pp. 217-218.) Following filing and ultimate dismissal of criminal charges, evidence of the burglaries was offered in a bar disciplinary proceeding. The attorney moved to suppress the evidence on grounds of unlawful search and seizure. (*Id.*, at p. 219.) Our Supreme Court found the search and seizure lawful but went on to consider whether the exclusionary rule should be applied in such proceedings. (*Id.*, at p. 226.)

The court first noted that "The exclusionary rules of the criminal law are based upon the principle that the state should not profit by its own wrong in using in criminal proceedings evidence obtained by unconstitutional methods; and upon the premise that by denying any profit to law enforcement officers who may be tempted to use illegal methods to obtain incriminating evidence (i.e., by not allowing the use of such evidence at the trial), the rules will have a deterrent effect." (11 Cal.3d at pp. 226-227.)

The court explained it "sanctioned the use of the exclusionary rules in a *civil* proceeding for forfeiture of a car used in unlawful transportation of marijuana in *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.3d 92 [41 Cal.Rptr. 290, 396 P.2d 706].) We there held 'Whatever the label which may be attached to the proceeding, it is apparent that the *purpose of the forfeiture is deterrent in nature and that there is a close identity to the aims and objectives of criminal law enforcement.* On policy the same exclusionary rules should apply to improper state conduct whether the proceeding contemplates the deprivation of one's liberty or property.'" (11 Cal.3d at p. 227, italics in original.)

The court noted, however, that "Deterrence and close identity to the aims and objectives of criminal law enforcement are not the only tests to be applied. In *People* v. *Moore* [(1968)] 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], we found a close identity between a civil narcotic addict commitment proceeding and the aims and objectives of criminal law enforcement and the deterrent effect of applying the exclusionary rules, and we held that the rules were there applicable. However, we also held that 'Whether any particular rule of criminal practice should be applied . . . depends upon consideration of the relationship of the policy underlying the rule to the proceeding.'" (11 Cal.3d at p. 227, quoting *People* v. *Moore* (1968) 69 Cal.2d 674, 681-682.)

The court explained it had "applied this balancing test in *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], in considering the

nature of an administrative proceeding—a parole revocation by the Adult Authority. One of the bases for revocation was a narcotics conviction received while the prisoner was on parole. After revocation the conviction was reversed on grounds of unlawful search and seizure of the evidence upon which it was based and because a confession was obtained in violation of the *Dorado-Miranda* rules. [Citations.] We found that there was some identity between the revocation proceedings and the aims and objectives of criminal law enforcement but we found practically no deterrent effect could be anticipated by the application of the exclusionary rules to that proceeding. A 'bungling police officer' who might be tempted to use unlawful means to obtain evidence to be used in a criminal trial might not even consider the effect of such illegality upon a parole revocation proceeding; in *Martinez* the police did not even know that the suspect was a parolee." (11 Cal.3d at pp. 227-228.)

The *Emslie* court concluded the "balance" weighed against applying the exclusionary rule in attorney discipline proceedings: "we find practically no deterrent effect upon any law enforcement officer who might be tempted to use unconstitutional methods to obtain evidence for use in a criminal trial. Here, as in the situation in *Martinez* the officer might not even know that the suspect was an attorney and might not even contemplate the consequences of an arrest or conviction upon professional disciplinary proceedings." (11 Cal.3d at p. 229.)

Courts following *Emslie* have uniformly declined to apply the exclusionary rule in civil proceedings where the rule would not deter the unlawful search at issue. Thus, *Emslie* and *Martinez* were followed by *Governing Board* v. *Metcalf* (1974) 36 Cal.App.3d 546 [111 Cal.Rptr. 724], in which police arrested a teacher engaging in an act of oral copulation. (P. 548.) The court declined to apply the exclusionary rule to the teacher disciplinary proceeding which followed, reasoning, as did *Martinez,* that the officer would not be deterred because he would not know of the later disciplinary proceeding. (*Id.*, at pp. 549-550.)

Similarly in *Pating* v. *Board of Medical Quality Assurance* (1982) 130 Cal.App.3d 608 [182 Cal.Rptr. 20], the court concluded the exclusionary rule would not be applied to bar the admission in evidence at disciplinary proceedings of medical records obtained unlawfully but in good faith by an investigator. (P. 625.) The court reasoned the rule would have no deterrent effect because the investigator could not have reasonably foreseen that his manner of obtaining the records was unlawful. (*Ibid.*)

Also, in *United States* v. *Janis* (1976) 428 U.S. 433 [49 L.Ed.2d 1046, 96 S.Ct. 3021], the United States Supreme Court was asked to create a

deterrent sanction by holding that evidence obtained by a state criminal law enforcement officer in good-faith reliance on a warrant that later proved to be defective shall be inadmissible in a federal civil tax proceeding. (P. 447.) The court declined the invitation, reasoning that exclusion from federal civil proceedings of evidence unlawfully seized by a state criminal enforcement officer would not deter the conduct of the state police. (*Id.*, at p. 454.)[5]

■ Here, too, an exclusionary rule would not have deterred Duffel's search nor would it deter future searches by employee supervisors situated similarly to Duffel. The search was motivated by Duffel's desire to prepare Tax Board's office to be moved. It was not motivated by a desire to uncover evidence damaging to plaintiff. Thus, a rule suppressing such evidence in disciplinary proceedings would not have deterred the search. Exclusionary rule or no, Duffel would still have examined plaintiff's briefcase for confidential tax forms. On these facts, the lack of deterrent effect counsels against application of the exclusionary rule.

This factual scenario distinguishes this case from *Dyson* v. *State Personnel Bd., supra*, 213 Cal.App.3d 711 where we recently held the exclusionary rule barred evidence in proceedings against a correctional officer before the Personnel Board. (P. 722.) There we explained, "The items were seized from Dyson's home and held by the agency pursuant to a search for evidence that Dyson had committed the crime of theft. The search was initiated, directed and participated in by Thomas Gold, the Preston Chief of Security, acting under his authority as a peace officer. The evidence was turned over by the agency to police authorities for use in a criminal proceeding initiated on the complaint of the agency. The evidence was there excluded and the criminal prosecution dismissed on grounds that the search violated Dyson's constitutional rights to privacy." (P. 714.) We concluded, "Here the deterrent effect [of the exclusionary rule] would work directly on the agency conducting the search for evidence of crime." (*Id.*, at p. 719.)

Unlike *Dyson*, in this case there was no search for evidence of crime and no motive to use such evidence for disciplinary purposes. Because of this factual difference, the deterrent effect of the exclusionary rule, which was found potent in *Dyson*, is lacking here.

---

[5]The United States Supreme Court has declined to extend the exclusionary rule to grand jury proceedings (*United States* v. *Calandra* (1974) 414 U.S. 338 [38 L.Ed.2d 561, 94 S.Ct. 613]) and to civil deportation hearings (*INS* v. *Lopez-Mendoza* (1984) 468 U.S. 1032 [82 L.Ed.2d 778, 104 S.Ct. 3479].) The court reasoned that in each case the deterrent effect would be minimal.

California appellate courts have declined to apply the exclusionary rule in juvenile dependency proceedings (*In re Christopher B.* (1978) 82 Cal.App.3d 608 [147 Cal.Rptr. 390]; *In re Robert P.* (1976) 61 Cal.App.3d 310 [132 Cal.Rptr. 5]) and high school disciplinary proceedings (*Gordon J.* v. *Santa Ana Unified School Dist.* (1984) 162 Cal.App.3d 530 [208 Cal.Rptr. 657].)

The trial court erred in excluding the evidence seized in the search of plaintiff's briefcase.

## DISPOSITION

The judgment granting a peremptory writ of mandate is reversed. Appellants shall recover costs on appeal.

Puglia, P. J., and Scotland, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 17, 1990. Mosk, J., was of the opinion that the petition should be granted.