Filed 9/7/16  P. v. Chavez CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ALBERTO RICARDO CHAVEZ,<br><br>      Defendant and Appellant. | B253686<br><br>(Los Angeles County<br>Super. Ct. No. VA123642) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert J. Higa, Judge.  Affirmed.

Jorge Gonzalez for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, and William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.

_____

Alberto Ricardo Chavez appeals from the judgment entered following a jury trial in which he was convicted of one count of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)) and one count of attempted murder (§§ 187, subd. (a), 664). Great bodily injury, personal use of a deadly weapon, and three prior prison term allegations were found to be true. (§§ 12022.7, subd. (a), 12022, subd. (b)(1), 667.5, subd. (b).) The court sentenced appellant to an aggregate term of 13 years in state prison.

Appellant contends that he was deprived of effective assistance of counsel and the trial court erred in failing to properly advise appellant or obtain his consent for a substitution of counsel prior to trial in accordance with Code of Civil Procedure section 284. We find no support for appellant's claims in the record, and affirm the judgment on appeal.[2]

## FACTUAL BACKGROUND

On February 8, 2012, around 2:50 p.m., Gregorio Chairez and his girlfriend, Stephanie Villasenor, were taking their 14-month-old son to a medical clinic for his vaccinations. Chairez had parked his SUV in the parking lot of a Walgreens store and was standing next to the driver's side door when he noticed a white Lexus sedan driven by appellant behind his vehicle. Appellant rolled down his window and said to Chairez, "What the fuck [are you] looking at[?]" Chairez responded that he was with his family and didn't want any problems, but appellant continued to insult him. Chairez repeated that he didn't want any problems. Chairez then saw appellant reach under the front

---

[1] Undesignated statutory references are to the Penal Code.

[2] Following oral argument, appellant filed a petition for writ of habeas corpus (B277133) in which he made substantially the same allegations with supporting declarations and documentary evidence. While we conclude that the record on appeal does not support appellant's claims of inadequate representation, we find that the petition states a prima facie case for habeas corpus relief. We therefore issued an order to show cause why the relief requested in the petition should not be granted.

passenger seat and exit his vehicle. Feeling threatened, Chairez grabbed a pipe bender[3] from the SUV. Appellant approached Chairez with his hand in his pocket, and the two men exchanged words. Chairez was afraid appellant might attack him with whatever he had in his pocket. Holding the pipe bender in one hand, Chairez shoved appellant with his left hand. Appellant returned to his car and drove slowly away.

Chairez returned to his vehicle and started to leave, but before he reached the exit, he noticed appellant's car in front of him, and he could see appellant looking at him through the rearview mirror. Appellant stopped, blocking Chairez's exit. Both men got out of their vehicles and appellant charged at Chairez. Villasenor could see a black object in appellant's hand. Chairez tried to run away, but appellant tripped him and he fell to the ground. As Chairez lay on his back, appellant stabbed Chairez in the heart and arm with a pocket knife. Villasenor ran over with the pipe bender and struck appellant twice on the right side of his head. As appellant started to run away, he was struck by another vehicle, but managed to get up and reach his car. Chairez took the pipe bender from Villasenor and smashed the rear window of appellant's vehicle before appellant drove away.

Appellant testified that he was parked in the Walgreens parking lot sending text messages when he made eye contact with Chairez. The two men started arguing. Appellant received a text message and reached over to pick up his cell phone from the passenger seat of his car. As he was checking the text message, appellant saw Chairez grab "some kind of big pole" and come toward him. Appellant got out of his car. Chairez pushed appellant, calling him "fucking nosy." Appellant and Chairez argued until appellant left in his car.

As appellant drove away, he noticed Chairez following him, making threatening gestures toward appellant. Appellant was behind another car at the exit when Chairez got out of his car and hit appellant's vehicle three times with the pipe bender. Fearing for his

---

[3] A pipe bender is a four-foot long aluminum tool used by electricians to bend electrical piping.

3

life, appellant got out of his car, subdued Chairez, and stabbed him in self-defense. When Chairez dropped the pipe bender, his girlfriend picked it up and started hitting appellant on the head with it. As appellant tried to run to his car, he was struck by another vehicle and rolled up over the hood. Appellant got up, ran to his car, and drove home.

Appellant testified that he suffered a stab wound to his right knee, and injuries to his left hand, chin, shoulder, and the top of his head as a result of the altercation. He told his parents he had been stabbed and hit by a pipe. Appellant sought treatment at the emergency room of a nearby hospital. He told the treating physician, Dr. Quang Le, that he had fallen off a ladder and hurt his knee and chin; he did not report any stab wounds or injuries to his head. Dr. Le sutured lacerations on appellant's knee and chin.

At the hospital, appellant reported that he had a history of bipolar disorder, depression, and schizophrenia. He testified that he had been diagnosed with ADHD when he was seven years old, and with schizophrenia and bipolar disorder, for which he was on medication. But the schizophrenia medication he was taking on February 8, 2012, was not effective, leaving appellant anxious, nervous, and paranoid. Appellant's father testified, confirming appellant's schizophrenia diagnosis.

Appellant also testified that in February 2005 he had suffered a gunshot wound to his face. As a result of the shooting, appellant is missing bone in his cheek, and the remaining bone is fractured in three places. At the time of the incident he was still going to the hospital every day and was waiting to have reconstructive surgery on his right eye. Appellant explained that when Chairez began swinging the pipe bender, appellant was afraid for his life because any blow to his face could be fatal.

## DISCUSSION

### I. Ineffective Assistance of Counsel

#### A. *Applicable Standards*

"A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution." (*People v. Doolin* (2009) 45 Cal.4th 390, 417.) The

4

constitutional right to counsel includes the right to *effective* legal assistance.  "When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy.  To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052].)  However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697; see also *In re Fields* (1990) 51 Cal.3d 1063, 1079.)  A defendant claiming ineffective assistance " 'must establish "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." ' "  (*In re Cox* (2003) 30 Cal.4th 974, 1016.)

Given the intrinsic difficulties in reviewing a claim of ineffective assistance of counsel, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 689; *People v. Lucas* (1995) 12 Cal.4th 415, 437.)  As our Supreme Court has observed, a "[d]efendant's burden is difficult to carry on direct appeal" (*Lucas*, at p. 437), for " ' " '[r]eviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission.' " ' "  (*People v. Vines* (2011) 51 Cal.4th 830, 876.)  Indeed, "[j]udicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court,

5

examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 689.)

Moreover, our Supreme Court has "repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal [of ineffective trial counsel] must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267; *People v. Carrasco* (2014) 59 Cal.4th 924, 980–981.)

**B.** ***The Record on Appeal Does Not Support Appellant's Claims of Ineffective Assistance of Trial Counsel***

Appellant contends he received ineffective assistance of counsel because his attorney failed to call a mental health or medical expert, and because he elicited character evidence from appellant's mother which "opened the door" for admission of appellant's prior convictions. Appellant further contends his counsel's performance was deficient due to ineffective cross-examination of prosecution witnesses and failure to demand production of the pipe bender. In the absence of any declarations setting forth the proffered expert testimony or showing of prejudice, appellant's claims on direct appeal fail.

*1. Failure to call a mental health or medical expert*

The absence of any declaration setting forth the proffered expert testimony is fatal to appellant's claim of ineffective assistance of counsel based on the attorney's failure to call a defense expert. In order to prevail on such a claim, appellant must identify " 'exculpatory or impeachment evidence that counsel could have revealed by further

6

questioning of prosecution witnesses [or examination of defense experts] and that would have produced a more favorable result at trial. [¶] . . . Such claims must be supported by declarations or other proffered testimony establishing both the substance of the omitted evidence and its likelihood for exonerating the accused.' " (*People v. Bolin* (1998) 18 Cal.4th 297, 334.)

The only indication in the record of the mental health expert's anticipated testimony is defense counsel's assertion in the opening statement that Dr. Armando D'Armis had previously diagnosed appellant with schizophrenia. Appellant, however, neither offers the substance of Dr. D'Armis's omitted testimony, nor explains how such testimony would have exonerated appellant. Appellant's ineffective assistance claim based on his attorney's failure to call a medical expert is similarly deficient. Again, appellant presents no declaration setting forth the substance of any medical expert's proffered testimony, and his argument that such testimony "might have negated the specific intent to kill by presenting evidence that [a]ppellant had previously suffered traumatic injuries to his face and head, possibly causing him to suffer cognitive defects, and/or causing him to suffer PTSD" is mere conjecture. Because " '[w]e cannot evaluate alleged deficiencies in counsel's representation solely on defendant's unsubstantiated speculation' " (*People v. Bolin*, *supra*, 18 Cal.4th at p. 334), we reject appellant's claims of ineffective assistance of counsel based on his attorney's failure to call various defense experts.

We further note that counsel's decision whether to call certain witnesses is a matter of trial tactics, unless that decision results from an unreasonable failure to investigate. (*People v. Bolin*, *supra*, 18 Cal.4th at p. 334.) Here, given the abundant evidence of appellant's mental disorders and the repercussions from the gunshot to his face, there is no indication that counsel's decision not to call a mental health or medical expert stemmed from any lack of investigation. On the other hand, counsel could well have concluded that Dr. D'Armis's testimony about appellant's schizophrenia would have been cumulative at best, and possibly even detrimental, depending on what his

7

examination of appellant had revealed. Counsel could also have reasonably decided that a medical expert would have added nothing to appellant's own testimony about the serious nature and ramifications of appellant's gunshot wound.

Thus, defense counsel's decision not to call various expert witnesses in this case must be deemed a matter of trial tactics and strategy, which we may not second-guess on appeal. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1059; see also *People v. Stanley* (2006) 39 Cal.4th 913, 955 ["Forgoing the presentation of testimony or evidence promised in an opening statement can be a reasonable tactical decision"].)

### 2. *Eliciting character evidence from appellant's mother*

We also reject appellant's contention that his counsel was ineffective because he elicited an opinion from appellant's mother regarding appellant's character for nonviolence, not anticipating that such testimony would "open the door" for the prosecution to present evidence of appellant's prior convictions and arrests.

Appellant testified on his own behalf, admitting on cross-examination three prior felony convictions for vehicle theft, resisting a police officer, and felony vandalism. Following appellant's testimony, the defense called appellant's mother, who gave her opinion that appellant is not a violent or an angry person. On cross-examination, the prosecutor asked the mother if she was aware that appellant had been arrested in September 2005 for attempted murder and carjacking. Appellant's mother testified she was aware of the arrest, but nonetheless maintained her son is a nonviolent person. When the prosecutor confronted the mother with appellant's three prior felony convictions, she continued to insist that appellant is not violent. On redirect examination, defense counsel elicited testimony from appellant's mother that appellant was never convicted of attempted murder and that the charge had been dismissed.

Evidence Code section 1101, subdivision (a) proscribes admission of "evidence of a person's character . . . to prove his or her conduct on a specified occasion." But the exception to this prohibition carved out by Evidence Code section 1102 authorizes admission of such evidence in a criminal action if offered by the defendant to prove his

8

conduct in conformity with such character, or by the prosecution to rebut favorable character evidence presented by the defendant.  Thus, " ' " "[w]hen a defense witness, other than the defendant himself, has testified to the reputation of the accused, the prosecution may inquire of the witness whether he [or she] has heard of acts or conduct by the defendant inconsistent with the witness' testimony.' " ' " (*People v. Payton* (1992) 3 Cal.4th 1050, 1066.)

Appellant contends that evidence of his prior convictions and arrest was inadmissible but for his lawyer's decision to have his mother testify to his character for nonviolence.  However, this assertion is only partially true.  Subject to the trial court's discretion, Evidence Code section 788 authorizes admission of a prior felony conviction involving moral turpitude for "the purpose of attacking the credibility of a witness." (*Ibid.*; *People v. Hinton* (2006) 37 Cal.4th 839, 887; *People v. Castro* (1985) 38 Cal.3d 301, 316.)  During his own testimony appellant admitted three prior felony convictions for crimes of moral turpitude.  (See, e.g., *People v. Rodriguez* (1986) 177 Cal.App.3d 174, 178 [felony of automobile theft necessarily involves moral turpitude]; *People v. Williams* (1999) 72 Cal.App.4th 1460, 1465 [felony of resisting a peace officer is crime of moral turpitude]; *People v. Campbell* (1994) 23 Cal.App.4th 1488, 1496 [felony vandalism involves moral turpitude].)  This left only appellant's 2005 arrest for attempted murder and carjacking as the one prior violent act about which the jury had not already heard when appellant's mother testified.  Defense counsel was able to minimize the negative impact of this evidence by eliciting testimony that appellant was not convicted of attempted murder and the charge had been dismissed.

Counsel could well have made the reasonable tactical decision that the benefit of the mother's opinion testimony and the potential for eliciting sympathy for appellant outweighed the minimal prejudicial effect of the jury learning of appellant's arrest on a dismissed charge and rehearing about his prior convictions.  (*People v. Vines*, *supra*, 51 Cal.4th at p. 876 [reversal of conviction on direct appeal on grounds of ineffective assistance only if record " ' "affirmatively discloses that counsel had no rational tactical

9

purpose" ' " for act or omission].)  Even if the tactic amounted to deficient performance, however, we find no reasonable probability that the result of the trial would have been different in the absence of the character evidence and the prosecution's rebuttal.  (See *Strickland v. Washington*, *supra*, 466 U.S. at p. 694; *In re Cox*, *supra*, 30 Cal.4th at p. 1016.)  Accordingly, appellant's claim of ineffective assistance of counsel based on his mother's opinion testimony fails.

3. *Failure to demand production of the pipe bender and to effectively cross-examine prosecution witnesses*

Appellant next asserts his counsel was ineffective for failing to obtain production of the pipe bender, inadequate cross-examination of the investigating officers regarding the damage to appellant's vehicle, and ineffective cross-examination of Dr. Le regarding the puncture wound to appellant's knee.  Insofar as appellant fails to demonstrate his counsel's inadequate performance, much less prejudice, his claim lacks merit.

Appellant's argument regarding counsel's alleged failure to demand production of the pipe bender is that its absence left "the jury with only a photograph and their imagination to ponder its potentially lethal nature as a weapon."  However, appellant's claim is both factually inaccurate and fails to establish " ' "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel." ' " (*In re Cox*, *supra*, 30 Cal.4th at p. 1016.)

Contrary to appellant's assertion, defense counsel did make reasonable efforts to obtain production of the pipe bender.  During the cross-examination of Chairez, counsel requested a court order to require the prosecution to produce the pipe bender.  Counsel also cross-examined both Chairez and Officer Perez as to the whereabouts of the pipe bender.  In any event, nothing in the record indicates that production of the pipe bender would have made any difference in the case.  (See *People v. Mai*, *supra*, 57 Cal.4th at p. 1009.)  The evidence presented to the jury was more than adequate to convey this tool's potential as a lethal weapon:  Chairez described the pipe bender as an orange four-foot

length of aluminum pipe, and a photograph of the pipe bender was shown to the jury and admitted into evidence.

Appellant's complaints about the inadequacy of defense counsel's cross-examination of the investigating officers regarding the damage to appellant's vehicle are also unpersuasive. Appellant's sole contention in this regard is that defense counsel failed to exploit the officers' "possible bias" and to "scrutinize the witness'[s] claims by comparing them to the actual physical damage to [appellant's car]." This, he maintains, "would've helped in developing momentum in [a]ppellant's favor." But the record demonstrates that, contrary to appellant's assertion, defense counsel did cross-examine the investigating officer about the dents in appellant's vehicle, and had him point out the specific location of those dents in a photograph of appellant's car.[4] Thus, not only did counsel fully explore the condition of appellant's vehicle in cross-examining the officer, but there is no evidence in the record of any "possible bias" on the part of the investigating officers that appellant's attorney failed to "exploit" to support appellant's claim of ineffectiveness.

Appellant further contends that defense counsel failed to adequately develop evidence that the laceration to appellant's knee could have been a puncture wound caused by a knife wielded by Chairez. He suggests that counsel should have "conducted pre-trial inquiry into this issue," conducted more effective cross-examination of the emergency room physician who treated appellant after the incident, or offered the medical report as an exhibit to demonstrate "the doctor appeared to harbor a pro-prosecution bias as well." Again, appellant fails to indicate how any of these measures would have improved appellant's prospects for a better outcome at trial.

---

[4] Appellant complains about the ineffectiveness of his counsel's cross-examination of *both* investigating officers as to the damage to the car, but only one of the officers who testified at trial had any personal knowledge of the condition of the vehicle.

The prosecution asked Dr. Le if the laceration on appellant's knee would be indicative of a stab wound; Dr. Le responded, "I would not know." On cross-examination, Dr. Le acknowledged that the medical report indicated appellant's injuries included a puncture wound, but repeated that he "would not know" if such an injury was consistent with a stab wound. Counsel also tried to link the wound to a possible stabbing by asking Dr. Le if he would describe the wound as a deep open wound. Dr. Le admitted it was an open wound, but stated he did not measure its depth.

In short, the subject of appellant's knee injury was fully explored by counsel during Dr. Le's cross-examination, and the medical report was properly used to refresh Dr. Le's recollection.[5] We therefore find no merit to appellant's claim of deficient performance on the basis of his attorney's effectiveness in addressing appellant's knee injury.

Appellant concludes that, taken together, the failings of defense counsel had "a devastating impact on the possibilities at trial," requiring reversal. But these ineffective assistance of counsel claims, woven from assertions of "possible bias" on the part of prosecution witnesses and evidence "possibly implying" other factual scenarios, amount to nothing but pure speculation. In the absence of any prejudice as a "demonstrable reality" from counsel's alleged errors or omissions, appellant's claims fail.

## II.  Substitution of Counsel

Appellant contends the trial court erred when it substituted appellant's privately retained attorney with another privately retained attorney from the same law firm without

---

[5] Appellant contends counsel's performance was deficient because he did not offer the medical report used to refresh Dr. Le's recollection as an exhibit. But given that Dr. Le acknowledged the report indicated a puncture wound, it is not apparent how the contents of the report could have made a difference in the trial had the report been admitted as an exhibit, and appellant fails to specify any legitimate basis for admitting the report.

12

seeking appellant's consent and approval in accordance with Code of Civil Procedure section 284. On the record before us, any error appears harmless.

Code of Civil Procedure section 284, which governs the right of a party to discharge retained counsel, provides for the substitution of counsel as follows: "1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes; [¶] 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other." (*Ibid.*; *People v. Ward* (1972) 27 Cal.App.3d 218, 234; see also *People v. Ortiz* (1990) 51 Cal.3d 975, 983.) The procedure applies to both criminal and civil cases. (*In re Haro* (1969) 71 Cal.2d 1021, 1029.) While a trial court's failure to comply with Code of Civil Procedure section 284 in substituting counsel in a criminal case constitutes error, such error does not require reversal in the absence of a showing of prejudice. (*People v. Donel* (1967) 255 Cal.App.2d 394, 401; *People v. Prince* (1968) 268 Cal.App.2d 398, 406; see also *In re Martinez* (1959) 52 Cal.2d 808, 813–814; *People v. Bouchard* (1957) 49 Cal.2d 438, 441–442.) Moreover, without a timely objection, such a claim may be forfeited on appeal. (*People v. Ward*, *supra*, 27 Cal.App.3d at p. 234.)

In the instant case, Lawrence Young substituted into the case as appellant's privately retained counsel on December 12, 2012, and appeared as appellant's attorney at the next two pretrial hearings. At a pretrial hearing on April 10, 2013, Carlos Perez appeared as appellant's counsel, advising the trial court that he was "[s]tanding in for Mr. Young, not substituting." Mr. Perez then requested a continuance of the trial date because both he and Mr. Young were engaged in back-to-back trials until May.

At the next pretrial hearing on May 13, 2013, Maureen Ward appeared as appellant's counsel, standing in for Mr. Young. Ms. Ward requested a continuance based on a motion signed by Mr. Perez of the Defender's Law Group in which Mr. Perez stated, "I need a continuance because I'm engaged in trial." When the court sought clarification as to who was the attorney of record, the court clerk stated, "According to the confidential

13

ex parte application,[6] the Defender's Law Group is Lawrence Young and Carlos Perez, according to his moving papers." The court then declared Mr. Perez to be the attorney of record, and granted the continuance. At this point, appellant addressed the court directly, stating, "I'm worried because they being telling me that I been seeing a psych and I haven't seen a psych to evaluate me. I want to see a psych." The court responded that it had already signed an order for an evaluation. Thereafter, Mr. Perez represented appellant as counsel of record for the remainder of the case, without objection or any indication from appellant that Mr. Perez was not his counsel of choice. Indeed, on December 9, 2013, the date set for the court trial on priors, another attorney, Greg Kechichian, appeared specially for Mr. Perez, who was engaged in trial. The minute order reflects that appellant "agree[d] that specially appearing defense counsel may stand in for Mr. Perez for this hearing only."[7]

On this record, it is apparent that appellant forfeited any claim of error based on the court's alleged failure to comply with the procedural requirements of Code of Civil Procedure section 284. Throughout the proceedings, appellant never disputed Mr. Perez's status as his attorney of record or Mr. Perez's authority to represent appellant. Even when the court declared Mr. Perez to be counsel of record, and appellant addressed the court directly, appellant did not raise any objection to the substitution of counsel, but instead inquired about an issue wholly unrelated to Mr. Perez's status in the case.

In any event, appellant's failure to question or object to Mr. Perez's presence suggests at a minimum that appellant implicitly consented to representation by Mr. Perez. When Mr. Perez stood in for Mr. Young on April 10, 2013, he requested a continuance on the ground that *both he and Mr. Young* were engaged in trial through May. Thereafter, it

---

**6** The record on appeal does not include the confidential ex parte application filed by Mr. Perez on appellant's behalf.

14

was Mr. Perez alone who made every single appearance in the case, except one, each time asserting without contradiction that he was the attorney for appellant. The one time Mr. Perez did not appear as appellant's counsel, appellant was required to consent to that attorney's special appearance for Mr. Perez. In short, nothing in the record on appeal suggests the representation by Mr. Perez—a member of the same criminal defense law firm as Mr. Young—was not consensual or in any way abridged appellant's right to counsel of his choice.

Finally, appellant's claim fails for lack of prejudice. Although appellant does not identify any particular harm that resulted from the allegedly improper substitution, presumably it is appellant's contention that he received ineffective assistance of counsel as a result of being forced to accede to representation by an attorney not of his choosing. However, as set forth above, the record on appeal reveals no demonstrable inadequacy in Mr. Perez's performance, nor any prejudice from the tactical decisions made in the course of Mr. Perez's representation. On this record, appellant fails to persuade us that he would have received a better result if Mr. Young had remained his attorney through trial. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

---

**7** The court granted Mr. Kechichian's request for a continuance, and the court trial on appellant's priors proceeded on December 11, 2013, with Mr. Perez once again appearing for appellant.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

LUI, J.

We concur:

CHANEY, Acting P. J.

JOHNSON, J.